BRADFORD AND WILLIAMS
vs
GEORGE H. WILLIAMS AND OTHERS.
} MARCH TERM, 1849.

[EVIDENCE—ELECTION.]

THE rule of evidence, that husband and wife cannot be witnesses for or against each other, is firmly established, and is founded partly on identity of interest, and partly on that principle of public. policy which seeks to prevent discord in families,—a policy of which no invasion will be permitted, even after divorce.

No case has been found in which a husband has been so far regarded as agent for his wife, as that his declarations as agent can be received in evidence against her.

The rule which admits as evidence the admissions and declarations of an agent, like other rules, is subject to limitations. Such declarations must be made in the course of, and accompanying the transaction which is the subject of inquiry,—but when so made, they constitute a part of the *res gestæ*, and are binding on the principal.

Declarations of an agent, made *after* the transaction, though in relation to it, are no part of the *res gestæ*, and are not binding on the principal, but come within the rule that excludes hearsay evidence.

The entries in the books of an agent, running over a long lapse of time, cannot be used against a principal, without showing that they were made under circumstances which constitute them a part of the *res gestæ*.

A plaintiff suing at law and in equity at the same time and for the same matter, will be compelled to elect in which court he will proceed. The reason and object of this rule is to relieve a defendant from the "double vexation" of defending himself in two courts against the same de-

mand,—and to avoid the clashing of jurisdiction, which would result from a jury finding a verdict one way and the Chancellor deciding another.

The party put to his election will be allowed a reasonable time to determine. This reasonable time seems now to be eight days.

The rule as to electing cannot be evaded by mingling other grounds of complaint in the action at law with that which is comprehended in the bill in equity, where the real, substantial ground of complaint is the same in both courts.

If plaintiff refuses to elect, his bill will be dismissed with costs.

Any decisive act of the party, with knowledge of his rights and of the facts, such as, asking to have a commission remanded upon any ground, determines his election.

One of several defendants, without the concurrence of the rest, has the right to compel an election.

THE CHANCELLOR :

This case is brought before the court upon applications on the part of the complainants and the defendants.

The complainants, who seek to vacate a decree for fraud, passed by this court in the year 1846, upon the allegation that it was obtained by collusion on the part of George H. Williams, and his mother, Elizabeth B. Williams, ask to have produced the books and papers of George Williams, the husband of said Elizabeth B., for the purpose of being used against the wife, upon the statement, that these books and papers contain evidence of the imputed fraud.

George Williams has been declared an insolvent debtor, and the books and papers in question are said to be in the hands of George H. Williams, as his trustee in insolvency.

The application is resisted upon several grounds, and among others, upon the settled rule that husband and wife cannot be witnesses for or against each other. The rule itself is not, nor could it be disputed, and although its indiscriminate application may involve an occasional failure of justice, there is no principle more firmly established. The reason for the exclusion is founded partly on their identity of interest, and partly on a principle of public policy, for the sake of preventing discord in families ; a policy of which no invasion will be permitted, even after a divorce ; the confidence which subsisted during coverture being held sacred, though the tie is sundered.

1 *Philips' Ev.*, 64, 66.—*Gresley's Ev.*, 342.—2 *Kent's Com.*, 178, 179, *and the notes.*

But it is urged in this case, that though George Williams, the husband, could not himself be examined as a witness, because his wife is pecuniarily interested, yet his books and papers may be inspected, and their contents if they contain evidence adverse to her, may be used against her. The argument is, that George Williams, under the circumstances of this case, must be regarded as the agent of his wife, and that any declarations or statements made by him, oral or in writing, in relation to the transaction referred to, must be considered as made by her, and may be used in evidence against her, as her own declarations or statements might be.

I have been furnished with no authority, nor have I been able to find any case, in which the husband has been treated as the agent of his wife, though cases may readily be found, in which the wife has acted as the agent of the husband, and her representations as such have been received in evidence against him. 1 *Philips' Ev.*, 71. 2 *Starkie Ev.*, 403. 2 *Kent Com.*, 179.

And there are a class of cases in which, without proving any express authority on the part of the wife to act for the husband, her declarations have been admitted as evidence against him. Such, for example, as the case reported in 1 *Strange*, 527, where in an action brought for nursing the defendant's child, the Chief Justice admitted evidence on the part of the plaintiff, that the defendant's wife had represented the agreement to be for so much per week, because, as he remarked, such matters are usually entrusted to the woman.

My impression is, that no case can be found, in which the husband has been so far regarded as the agent of the wife, as that his declarations can be received in evidence against her.

But assuming the contrary to be true, I should still think, the entries in the books and papers called for, would not be admissable to affect the interests of the wife.

The rule which admits as evidence the declarations or representations of an agent, is, like most other rules, subject to limitations and restrictions. Such declarations or representations must be made in the course of and accompanying the transaction which is the subject of inquiry. When thus made by an agent, acting within the scope of his authority, they are

received as the declarations or admissions of the principal, constituting a part of the *res gestæ*, and as binding upon him, as if made by himself.

But such declarations, made by an agent *after* the transaction, though in relation to it, constitute no part of the *res gestæ*, and are not binding on the principal, as evidence against him. *Franklin Bank vs Steam Company*, 11, *G. & J.*, 28.

The rule, therefore, requires, before the declarations of an agent can be given in evidence against his principal, that it shall appear, they were made at the *time* of, and *accompanying* the transaction enquired of ; or otherwise, they will come within the general rule, excluding hearsay evidence ; being no part of the transaction, but only statements respecting it, and must if material, be proved by the testimony of the agent and not by proof of his declarations.

The attempt in this case is to prove the situation of certain trust estates, held by a trustee, in trust, for Mrs. Williams, the accounts of which, it is said, were kept in the books of her husband.

It is not shown *when* the entries were made, or the transactions, the record of which is presumed to be in those books, took place.

The books called for are supposed to contain entries and accounts, embracing many years and numerous transactions, and these entries, it is said, are evidence against the wife, though it has not been, nor can it be shown, that they were made under circumstances which constituted them a part of the *res gestæ* ; that is, a part of the transaction which they record, and if not, they are to be treated as mere hearsay evidence, and of course to be excluded.

It is, I think, impossible to contend with success, that if the relation of husband and wife did not subsist between Mr. and Mrs. Williams, and viewing them merely as occupying the relation of principal and agent, that the books of the latter could be received in evidence against the former ; and my conviction is very strong, that the existence of the former relation furnishes no ground for a relaxation of the rule which confines the admissible declarations of an agent within the limits which have been mentioned. The receipt of an agent

for goods directed to be delivered to him, was upon one occasion read in evidence against the principal, but that decision was subsequently condemned, and may, as the Court of Appeals say, in 11 *G. & J.*, 34, 35, be considered as overruled. And if a receipt given by an agent may not be read against his principal, it is difficult to understand upon what principle, a series of entries in the books of an agent, running over a long lapse of time, can be used against him, without any attempt to show the period or the circumstances under which the entries were made.

Being, for these reasons, of the opinion, that the books, if produced, could not be evidence, the application must be refused.

The defendant's application is, that the complainants shall be compelled to elect, whether they will proceed in this court, or in the court of law.

The practice of compelling the plaintiff to elect, when he is suing at law and in equity at the same time, for the same matter, is said to have originated in an order of Lord Bacon, according to which, double vexation is not admitted, and if the party sue for the same cause at common law and in chancery, he is to have a day given him to make his election, where he will proceed, and in default of such election, to be dismissed. 18 *order Bearnes' orders*.

The reason of the rule, as stated in the books, is, that it would be inconsistent with the ends of justice to permit a party to proceed in this court and at law, at the same time, for the same demand ; for the jury may find a verdict one way and the Master make a report a different way, which would occasion such a clashing of jurisdiction as could never be endured. See *Livingston vs Kaine*, 3 *Johns. Chan. Rep.*, 224.

The party when put to his election will be allowed a reasonable time to determine in which court he will proceed, and this reasonable time seems now to be eight days.

2 *Daniel's Ch. Pr.*, 961, *note*. *Rogers vs Vosburgh*, 4 *Johns. Ch. Rep.*, 84.

By the terms of the order, the plaintiff and his solicitor, having notice thereof, shall within eight days after such notice make his election in which court he will proceed ; and if he

elects to proceed in Chancery, then his proceedings at law are to be stayed by injunction ; but if he elect to proceed at law, then his bill in this court will be dismissed with costs. *Daniel's Chan. Pr.*, 963, 964. *Rogers vs Vosburgh*, 4 *Johns. Chan. Rep.*, 84.

There can be no doubt at all of the power and duty of the court, to compel the plaintiff to elect in a proper case, and it is a power which this court has repeatedly exerted. But in this case it is said, the suit at law and the bill in equity do not involve the same matter, and therefore, there is no such "double vexation" as is prohibited by the rule. It seems to me, however, from a comparison of the case made by the bill, and that portion of the pleadings in the suit at law which has been introduced here, and which it is admitted is an accurate copy of one of the breaches assigned in the replication, that the case at law, so far as this breach is concerned, is in substance, identical with the case made by this bill, and therefore, if both suits are permitted. to go on, the defendant is exposed to the "double vexation" of defending two suits ; and there is danger from the different conclusions to which the two courts may come—of that "clashing of jurisdiction," which as declared by Lord Manners, in 1 *Ball & Beat.* can never be endured.

It is true, in the action at law, other causes are combined with that embraced in the bill filed in this court ; and this, it has been urged, is a reason, why the rule in question should not be applied to the present case. I cannot see, however, in this circumstance, any sufficient reason for exempting this case from the operation of the rule. The mingling other grounds of complaint with that which is comprehended in the action at law and the bill in equity, does not relieve the defendant from the "double vexation" of defending himself in two courts, against the same complaint. Nor will it avoid the risk, that different results with regard to this particular demand may be arrived at, and conflict and clashing thereby produced. And it is moreover, quite manifest, that if the rule as to electing can be evaded in this way, it will become of little or no practical utility ; as in every case various causes of action may be combined, though the real, substantial ground of complaint in the two courts may be the same.

I think, therefore, the plaintiffs must be put to their election, and shall so order.

[In conformity with the preceding opinion, the Chancellor, on the 30th of June, 1849, passed an order to compel the plaintiffs to elect. The plaintiffs refused to make an election in obedience to the order. Thereupon, on the 16th of November, 1849, an order was passed dismissing the bill, with costs. Accompanying which order is the following opinion of the Chancellor.]

THE CHANCELLOR:

This Court having decided that the plaintiffs are bound to elect, their right to prosecute their suits in both courts cannot be regarded here as an open question. They must proceed in the one court or the other, and the practice is firmly established, that if the election is to proceed at law, the bill is from thenceforth to stand dismissed out of this court, as against the defendant, with costs. 2 *Daniel's Ch. Pr.*, 963, 964. *Rogers vs Vosburgh*, 4 *Johns. Ch. Rep.*, 84.

But the plaintiffs in this case refuse to elect, and it becomes therefore necessary to decide whether the proper remedy is to restrain them by injunction from prosecuting their suit at law, or to dismiss their bill in this court. My impression is, that the proper course, under such circumstances, is to dismiss the bill here, and I shall accordingly do so.

In the case of *Livingston vs Kane*, 3 *Johns. Ch. Rep.* 224, which was a case in which the plaintiff declined making an election, it seems to have been the opinion of the Chancellor, that if it had been the ordinary case of an election, he would have had full power to dismiss the bill, and would have exercised it.

After explaining the rule upon the subject of compelling parties to elect, when they are proceeding at law and in equity, at the same time for the same demand, he says, "it is quite apparent from this explanation and history of the rules, that the present case is not within it, to the extent of requiring the bill to be dismissed, there is no 'double vexation' by the continuance of the suit here." The Chancellor, therefore, did

not dismiss the bill, but the plaintiff having refused to elect, he dissolved an injunction which he, the plaintiff, had obtained, to restrain the defendant from proceeding at law upon a judgment rendered in their favor.

In the case now before the court, the application to compel the complainant to elect, was made by one of several defendants, and the remaining defendants have submitted the cause under the rule, upon the bill, answers, exhibits, and proofs, in the cause.

The order to compel the plaintiff to elect, was passed on the 30th of June, 1849, and the commission with the proofs, was returned on the 20th of the same month, and it is possible, therefore, that the plaintiffs had collected all their evidence before they were put to their election. But the question is, whether they could, after they were put to their election, proceed in this cause in any way until they actually elected so to do. If they had come here, and asked to have the commission remanded, upon any ground, however strong, or for any other order, essential to the preparation of their cause, for the consideration of the court, would they not have been told, your doing so is an election to proceed in this court, and your suit at law must be enjoined ; the rule being that any decisive act of the party, with knowledge of his rights and of the facts, determines his election in the case of inconsistent remedies. *Sawyer vs Wood*, 3 *Johns. Ch. Rep.*, 416.

It may seem to be hard, that these defendants, who desire to have a decision of the case upon the merits, shall not be permitted to do so, because their associate defendant, without their concurrence, has put the plaintiffs to their election ; but I do not see how the inconvenience to them is to be avoided, without subjecting the plaintiffs to hardships still more intolerable.

The most I can do, therefore, is, in my opinion, to dismiss the bill with costs, the liability to which may, in a majority of cases, be regarded as a sufficient security for such evils.

T. S. Alexander for complainants.

Wm. Schley for defendants.