## BLACK, *et al. vs.* CORD.—June, 1827.

Chancery will not interfere, as between the parties, to set aside a fair voluntary conveyance; where the equity being equal, the volunteer having the law shall prevail.  But it is now a clearly settled rule, that chancery will not decree a specific performance of a mere voluntary covenant or agreement without consideration, to make a conveyance.

So where J executed under his hand and seal an instrument of writing as follows:  ''This obligation obliges me to give H or his heirs or assigns, the one moiety or half of 50 acres of land called *M*; and also the one moiety or half of a tract called *H B*.   This instrument of writing to be binding on me, my heirs and assigns, for the true performance of the same;'' and there was no evidence of any consideration passing between H and J— It was held to be a mere voluntary covenant or agreement, which did not entitle H to the land itself, nor to a decree for a specific performance, nor to any part of the proceeds of the land which was sold on the application of the creditors of J.

APPEAL from the Court of Chancery.

This cause was argued before BUCHANAN, Ch. J. and EARLE, and MARTIN, J. and is fully stated by the chief judge, who delivered the opinion of the court.

*Magruder*, for the Appellants, contended, 1. That there was no sufficient proof of the execution and delivery of the instrument of writing, whereby *John Cord* obliged himself to give to *Henry Cord*, (the appellee,) the one half of the lands therein mentioned.   2. That if its execution was proved, still the appellee would have no claim to one half of the proceeds arising from the sale of the lands, as it was not such an instrument of writing as would have enabled the appellee to obtain a deed for the land from *John Cord*, or his heirs—It not being

stated therein that any valuable consideration passed from the appellee to *John Cord* to induce the instrument of writing.

The *first* point was, however, afterwards abandoned, the act of 1825, *ch.* 120, having provided that the execution of an instrument of writing may be proved by other evidence than the subscribing witness to it.

On the *second* point, he cited *Watts vs Bullas*, 1 *P. Wms* 60, *(note.) Minturn vs Seymour*, 4 *Johns. Ch. Rep.* 500.

*Alexander*, for the Appellee, cited *Hannan vs. Towers*, 3 *Harr. & Johns.* 147. *Watts vs Bullas*, 1 *P. Wms.* 60. *Randal vs Randal*, 2 *P. Wms.* 464, 467. *Vernon vs Vernon, Ib.* 594. *Osgood vs Strode, Ib.* 248. *Edwards vs Countess of Warwick, Ib.* 175. *Goring vs Nash*, 3 *Atk.* 186, 188. *Morris vs Burroughs*, 1 *Atk.* 401. *Franklin vs Thornebury*, 1 *Vern.* 132. *Bothomly vs Lord Fairfax*, 1 *P. Wms.* 334. *Newsham vs Gray*, 2 *Atk.* 287. *Harvey vs Mountague*, 1 *Vern.* 127. *Vernon vs Vernon*, 4 *Bro. P. C.* 26. *Bunn vs Winthrop*, 1 *Johns. Ch. Rep.* 329, 336.

BUCHANAN, Ch. J. delivered the opinion of the Court. The material facts and circumstances of this case are these— *John Cord*, on the sixteenth of March 1815, executed, under his hand and seal, an instrument of writing in these words: "This obligation obliges me to give *Henry Cord*, or his heirs or assigns, the one moiety or half of fifty acres of land, being part of a tract of land called *The Mistake*, which my father, *James Cord*, bought of *Nathan Dorsey*; and also the one moiety or half of a tract of land called *Hickory Bottom*, which my father, *James Cord*, purchased of *Robert Davis*. This instrument of writing to be binding on me, my heirs and assigns, for the true performance of the same. In witness whereof, I have hereunto set my hand and seal this sixteenth day of March eighteen hundred and fifteen," and died without issue, leaving his brother, *Henry Cord*, and other brothers and sisters, his heirs at law. Against whom, his personal estate not being sufficient for the payment of his debts, a bill in chancery was filed by one of his creditors in behalf of himself and the other creditors, for the sale of the real estate of which he died seized, and a decree was passed accordingly, and the lands sold. *Henry*

*Cord* consenting in his answer to a sale, with a reservation of the right to claim such proportion of the proceeds of the sale as he should be able to show himself entitled to under the instrument of the sixteenth of March 1815, executed by his brother *John Cord*. And after a sale was made by the trustee appointed for the purpose, and ratified by the chancellor, he filed a petition in chancery, seeking to be paid a proportion of the money arising from the sale, corresponding with the claim set up under that instrument of writing. To this there was a counter petition by the appellants, denying the right of *Henry Cord* to any part of the proceeds of sale by virtue of that instrument, and praying an equal distribution of the surplus, after payment of the debts among the representatives generally of *John Cord.*

In the further progress of the case an account was stated by the auditor, allowing to *Henry Cord* one half of the money arising from the sale of the sixty acres of land mentioned in the instrument of writing, on which his claim is founded, which account was ratified by an order of the chancellor, and the trustee directed to apply the proceeds accordingly. And the case is brought before this court on an appeal from that order. The due execution of the instrument by *John Cord* is sufficiently proved; and the further proof in the cause is, that *Henry Cord* had the possession and enjoyment of the whole sixty acres from that time; that it was much improved by his skilful and judicious mode of cultivation, and that *John Cord* frequently said he had given him one half of it; but there is no evidence of any consideration moving from *Henry.* He paid nothing for it, and it does not appear that he put any improvements upon the land. And its improved condition, arising from his skilful cultivation of it, was to his own advantage, having occupied the whole sixty acres, (with no pretence of claim to more than a moiety,) and enjoyed all the fruits of his own good management. It was a mere voluntary covenant or agreement, therefore, on the part of *John Cord,* and we can discover nothing in the record to entitle *Henry Cord* to a moiety of the proceeds of sale, which would not have entitled him to a decree for a specific performance of the agreement. If he was not entitled to the land itself, and could not have compelled a conveyance, he is

not entitled to a decree for the proceeds or money arising from the sale of it. Would chancery, then, have decreed a conveyance of the land on a bill filed by him for that purpose? We think not. Chancery will not interpose, as between the parties, to set aside a fair voluntary conveyance; where the equity being equal, the volunteer having the law, shall prevail. But it is now a clearly settled rule, that chancery will not decree a specific performance of a mere voluntary covenant or agreement without consideration, (such as this,) to make a conveyance. *Francis's Max.* 14, *ch.* 15. 1 *Maddock's Chancery*, 414, 415. *Osgood vs Strode*, 2 *P. Wms.* 249. *Billingham vs Lowther*, 1 *Ch. Ca.* 243. *Minturn vs Seymour*, 4 *Johns. Chan. Rep.* 500. And this does not fall within the principle of that class of cases in which a specific performance of marriage articles has been decreed in favour of collaterals, in relation to whom the stipulations have been deemed to be not purely voluntary, but the consideration considered as extending to, and running through, all the limitations in the articles. The order of the chancellor, therefore, must be reversed.

ORDER REVERSED.