JOSEPH SHEPHERD *vs.* MARY BEVIN AND ELIZA BEVIN, ET AL.—*June* 1850.

It is admissible to show by parol, that a receipt executed by the appellant to his mother, stating that he had received from her, as his guardian, the sum of $571.64, being his distributive share of his father's personal estate, was intended to operate as a payment of so much money upon lands, for the purchase of which he had made a parol agreement with his mother.

Any paper that purports to be a receipt or acknowledgment for the payment of money, may be explained or contradicted.

Mere inadequacy of price, unattended by fraud or circumstances of suspicion, is no ground of objection where the contract is fair and voluntary, and will not influence a court of equity against enforcing a specific performance, where no undue advantage is taken.

In an agreement made by a parent with a child, a slight consideration will be sufficient to support it.

Money expended in the improvement of lands, on the faith of the contract, constitutes a consideration on which to ground a claim for specific performance.

A parol agreement made by the appellant with his mother, that the latter should convey to him certain lands, provided he would relinquish to her his interest in his father's personal estate, was decreed to be specifically executed against the heirs of the mother, upon proof clearly establishing it, and that it had been in part performed by appellant's, taking possession and making improvements on the lands, and executing a receipt to his mother, as his guardian, for his share of his father's personal estate, with the understanding that it was to carry out this agreement.

This court is not anxious to grasp at slight circumstances, to take a case out of the operation of the statute; nor to allow any latitude of construction, where there is any equivocation or uncertainty. The contract must be clear and definite, and the acts done should be equally clear and definite, and solely with a view to the agreement being performed.

APPEAL from the *Court of Chancery.*

The bill in this case was filed on the 9th of October, 1847, by the appellant, one of the heirs at law of *Mary Shepherd*, to enforce against the other heirs of said *Mary*, the specific performance of a parol agreement for the sale of certain real estate, entered into between the appellant and the said *Mary*, in her lifetime.

The allegations of the bill, answers and facts of the case, are fully stated in the opinion of this court. The receipt

alluded to in said opinion, as given by the appellant, is as follows:   "Received February 18th, 1843, of *Mrs. Mary Shepherd*, my guardian, the sum of $571.64, being my full distributive share of my father, the late *John Shepherd's* personal estate.                                 JOS. SHEPHERD."

" Witness:—*Charles Hodges*."

This receipt was acknowledged by said *Joseph* before a justice of the peace, and recorded in the register of wills' office for *Anne Arundel* county.

*John Shepherd*, the father, died in 1825, leaving a will, by which, believing he had a right to do so, he devised the land in controversy, which belonged to his wife in fee, to his wife, the said *Mary Shepherd*, "during her natural life, and at her decease to my son, *Joseph Shepherd*." The said *Mary* died intestate of said real estate in September 1847, leaving the complainant, *Joseph Shepherd*, and the defendants, *Elizabeth*, *Susan*, *William*, and *Samuel Shepherd*, and *Mary Plummer*, wife of *Thomas Plummer*, her children, and *Mary*, *Ann Eliza*, *John W.*, and *Charles Bevin*, the infant children of a deceased daughter, her sole heirs at law, to whom the legal estate in said land descended.

After testimony was taken, and the cause set down for hearing and argued, the chancellor, (JOHNSON,) passed a decree dismissing the bill, accompanied by an opinion, which is reported in 1*st Md. Ch. Decisions*, 244.   From this decree the complainant appealed.

The cause was argued before DORSEY, C. J., CHAMBERS, SPENCE and FRICK, J.

McLEAN and DANIEL M. THOMAS, for the appellant, contended, that the decree should be reversed:

1st. Because the true consideration of the receipt is not inquired into for the purpose of invalidating the receipt, but to explain an independent transaction, and therefore the evidence is admissible.

2nd. Because testimony is admissible to set up a parol con-

tract relative to the transfer of lands, where acts of part performance under it can also be proved.

3rd. Because the proof in this case clearly and definitely establishes the contract, and acts of part performance exclusively referrible to it.

4th. Because, where the consideration, as here, is a *valuable* one, mere inadequacy is no objection to it, unless fraud can be presumed or proved.

5th. Because, where the consideration is partly valuable, other considerations may be proved to substantiate it, and rebut the presumption of fraud.

RANDALL and HAGNER argued for the affirmance of the decree :

1st. Because parol evidence is inadmissible to explain, vary or annul the written receipt of *Joseph Shepherd,* exhibited with the bill, as part of a contract to affect land.

2nd. Because the parol contract set forth in the bill, is void under the statute of frauds:—1st. Because it is not established certainly, definitely and unequivocally. 2nd. Because, if the said contract is sufficiently established, the acts of part performance, relied on by the appellant, are not exclusively referrible to that contract.

3rd. Because it would be inequitable to enforce the contract as set up in the bill, if the same were proved.

FRICK, J., delivered the opinion of this court.

The bill in this case, filed by *Joseph Shepherd,* the appellant, on the 9th of October, 1847, states:   That *Mary Shepherd,* the mother of the appellant, was in her lifetime seized and possessed in fee of a certain parcel of land, subject only to the life interest of her husband, *John Shepherd,* the father of the appellant.   That *John Shepherd,* the father, at his death, under the impression that he was the fee-simple owner thereof, and had a right so to do, devised the same to the appellant. That the mother being willing and anxious, that the mistaken devise of her husband should be gratified, and that the appel-

lant should enjoy the land in fee-simple, agreed to convey it to him, provided he would relinquish all interest in his father's personal estate.

The bill then further states, that the appellant agreed to this proposition, and for the purpose of carrying it out, executed to her a receipt for $561, the amount of appellant's share of said personal estate, although he never received any portion thereof, the receipt being intended merely to carry out the agreement, and to operate as a payment of so much money upon the land; and that immediately thereafter he took possession of the land, in pursuance of the agreement, and has held and possessed the same ever since; his mother always, until her death, treating and speaking of him as the owner thereof. That she had promised and agreed to execute a conveyance to him, whenever requested to do so, but that she departed this life intestate of her real estate, and without having executed the deed, leaving the appellant himself, two brothers, three sisters, and the children of a deceased sister, (the latter all infants,) her heirs at law.

The facts alleged in the bill are admitted to be true, and the relief sought by the appellant is assented to by all, except the infant defendants, who, by their guardian, denied the facts; whereupon the commission issued under which the testimony in the cause was taken.

The receipt produced in evidence, bears date the 18th of February, 1843. It professes to be a receipt signed by *Joseph Shepherd* from *Mrs. Mary Shepherd*, his guardian, for the sum of $561.64, being in full for his distributive share of his father's, the late *John Shepherd's*, personal estate, witnessed before a justice of the peace, and acknowledged before him by *Joseph* to be his act and deed, for the purpose therein mentioned, according to the act of Assembly, &c.; and testimony was further adduced by the appellant, to prove that the money expressed in the receipt was never paid, but was retained by the mother in pursuance of the agreement, and as part of the contract upon which she was to execute to *Joseph* a conveyance of the land.

To this testimony the infant defendants excepted, on the

ground that it was offered to vary, explain or contradict the written instrument of the party, and was therefore illegal and inadmissible.

We are of opinion, that the objection is not well taken, and that evidence is clearly admissible to explain the intention of the parties to the paper.

This instrument, it is true, is the proper and authenticated evidence of the discharge of the guardian from the appellant's proportion of his father's estate; and it may be conceded, that in the face of such a discharge, it would scarcely be competent to the ward to open the account, on the ground that nothing had been paid or received, unless it might be upon an alleged mistake or fraud. But it is not proposed to impeach the true character and purpose expressed in the receipt, or to deny that it was designed to discharge the amount due to the appellant from his guardian, and pass that amount to her credit as money, paid in liquidation of his claim against her. But it is asserted, that the application of the money and the receipt was agreed upon at the same time, as the simplest form to pay to her the consideration for the land, which she had proposed and agreed to convey.

The general rule, that evidence is not admitted in explanation or contradiction of the contents of a written paper, is subject to the very exception here presented. Any paper that purports to be a receipt or acknowledgment for the payment of money, may be explained. The object here is not to repudiate the receipt, or to deny that it is a discharge of the indebtedness of the mother as guardian, but to show the application of the money that constructively passed by the receipt, to the object previously agreed upon between them. The evidence proposes to explain how the money agreed upon as the consideration for the land to be conveyed, assumed the form of payment which is given to it by this receipt. No effort is made to impeach the paper. The payment of the money, or a discharge for the amount in settlement of the personal estate of the father, is admitted. The next object is to show its simultaneous application to the contract which induced it, and there

is no rule which excludes extrinsic evidence, to show the true design and character of such a paper. On the contrary, it is a familiar principle, that a receipt acknowledging the payment of money, is susceptible of explanation or of contradiction. See 1 *Gill*, 90, *Wolfe vs. Hauver.* And 1 *Gill*, 423, *Cole vs. Albers and Runge.* 2 *H. & G.*, 114, *Stewart vs. The State.*

This receipt being thus open to explanation, we proceed to the testimony of *Susan* and *Elizabeth Shepherd,* two of the defendants, which, upon application to the chancellor, was taken, subject to all legal objections. And this evidence being free from all exception, the first thing that forcibly suggests itself, is the established fact that no money was paid in hand to the appellant at the time. No positive contract is proved by either of the sisters; but *Susan* says, "that it was in consideration of this receipt, that the mother put *Joseph* in possession of the land, and that he paid taxes on it; that the mother paid *Joseph* no money, and frequently said she never intended to pay, as she had given him the land; that he was to take possession of it, by executing to the mother a receipt in full for his proportion of the father's estate." *Elizabeth Shepherd* confirms all this by her answers to the interrogatories, and adds, "that the heirs at one time proposed to the mother to sell the land, and divide the proceeds among her children, but the mother refused, saying it had been left to *Joseph* by the father, and she intended it for him." So far the proof is definite, that she put him in possession of the land, in consideration of his relinquishing the amount due to him from the father's personal estate. And that this was in part performance of a contract between them to that effect, designed to give to him a fee-simple estate in the land, is made clear and manifest by the testimony of *Dr. James S. Owens.* He says, "that some years past, he was requested by *Mrs. Shepherd* to draw her will; that she, at that time, told him she designed giving the land to *Joseph,* that the father intended it for him, and that she requested witness to say to *Joseph,* that she desired he would take possession of the land, and *she would sign a deed conveying*

*the same to him*, so soon as one for the purpose was prepared, and he knows, that after communicating this conversation to *Joseph*, he took possession of the land." Now, when he took possession of the land, the sisters say that it was in considera- tion that he should execute the release of his father's personal estate, and he did do so. The context of this testimony shows obviously, that this possession of the land, and the promise of a deed of conveyance from the mother, was immediately after the execution of the receipt. We have, therefore, a contract clear and definite in all its component parts, fully performed on the part of the son, and wanting on the part of the mother only the execution of the deed.

The inducements to this contract may be thus summed up: *Samuel*, the husband of *Mary*, and the father of *John Shep- herd*, under the impression that the wife's property was subject to his disposal by his will, devised it to his wife for life, and remainder to *John* in fee. After his death, the mother asserted her separate right, took possession of the land, and became the guardian of her infant children. It appears from a portion of the testimony, that at one time she spoke of selling the pro- perty, and some of the children joined in advising the sale. The particular period to which this refers is not stated, but from the connection of the testimony, it was obviously *before Joseph* was put in possession. For after that, it is proved that she refused to hear of a sale, because she said she intended the property for him. When the time afterwards arrived for the settlement of her accounts as guardian, it is plainly inti- mated that she was destitute of money, or, in the language of one of the daughters, had none to spare; and recurring to the intention of her husband, expressed in his devise to *John*, with an impulse both natural and laudable, she proposed to confirm the devise, upon his surrendering all claim to the father's per- sonal estate. The proposition was made originally from her- self; not to give him a temporary interest by possession, but to confer the title in fee and execute to him a deed, because she designed and proposed to do what the father intended by the will, and so expressed it. If this proposition had been in writ-

ing, could there be any doubt or hesitation about it? Clearly not. And when in compliance with it, the son executes the receipt and discharges her, and immediately thereon she surrenders the possession of the land, what remains to complete the contract but the execution of the deed? And this is now sought from the other heirs of *Mary Shepherd*, as the only ingredient to the final consummation of the contract.

Much stress has been laid upon the supposed inadequacy of the consideration. But this objection, standing alone, is, of itself, of little or no weight, when it is clear, as in this case, that the parties understood their bargain, and in the fulfilment of it there is no pretence of fraud or circumvention. The cases cited by the counsel for the appellees on this head, are all distinguishable from this. None of them assert that inadequacy of price alone, unattended by fraud or circumstances of suspicion, was ever declared a sufficient ground to avoid a contract in other respects regular. On the contrary, the parties have a right to make their own contract, and the mere inadequacy of price is no ground of objection, where the contract is fair and voluntary. 2 *H. & G.*, 100, *Black vs. Cord.* 2 *H. & G.*, 114, *Stewart vs. The State.* A sale may be made of property, where the price is manifestly inadequate to the value, and under a hard and pressing necessity on the part of the vendor, but in the absence of fraud, equity could interpose no relief. 10 *Vez.*, 474. 8 *Vez.*, 518. Improvidence or inadequacy of consideration, do not influence a court of equity against enforcing a specific performance, where no undue advantage is taken. 5 *Gill*, 288, *Young vs. Frost.* But this case has still a stronger claim to exemption from any stringent rule of law, by reason of the peculiar relation of the parties. The agreement is not between strangers, but the parties are mother and son, in the closest relation of life. The contract has the meritorious consideration of love and affection, superadded to the valuable consideration which passed between them. Could the appellant reasonably have declined the proposition to release the amount of his claim against the mother, when coming from herself? And, as her own proposition to

her child, of what weight is the objection on the score of the inadequacy of the price proposed and accepted by herself? No small part of the consideration besides, acting upon her motives, was the desire to gratify the last expressed wishes of her deceased husband. And in an agreement made by a parent with a child, a slight consideration will be sufficient to support it. 4 *H. & McH.*, 258. It is true "this consideration, however slight, must be performed," and it has been our object to show, that in this case it has been done strictly with a view to, and within the agreement between the parties. 2 *Story Eq., sec.* 762. The case of *Hays vs. Hollis*, 8 *Gill*, 357, decided at the present term of this court, is, upon this point, precisely parrallel, and obviates all further remarks upon the objection to the adequacy of consideration in the case now before us.

But there are other and additional considerations which, in our opinion, strengthen the claim of the appellant. It is proved, that upon receiving possession, *Joseph Shepherd* proceeded to enhance the value of the land, by building a barn and other improvements, at a cost estimated by witnesses at $500. This, however, is attempted to be neutralized by other evidence, that the proceeds of the land in his possession, were more than equal to any amount expended by him upon the improvements. It is therefore insisted, as the true equity of the case, that conceding the $571 as paid to the mother, we are to look to the usufruct of the property during the possession, as a full equivalent for any improvement made upon it, and by holding the land chargeable with the mother's indebtedness to *Joseph*, reimburse him by a decree for the sale, out of the proceeds thereof. In other words, to reinstate the parties in *statu quo*, where they stood before the release was executed, and hold the estate of the mother liable to refund the amount.

This can only be deemed equity in a case where no definite contract appears, or at least none so specific as to justify a decree for performance of it. For where the case is clearly and fairly established, no court of equity could stop short of a decree for the full performance. None of the cases cited on this branch of the argument, express any other doctrine. On the

contrary, the case mainly relied on in 9 *Peters,* 204, *King's heirs, vs. Thompson and wife,* where the court decreed that the property should be sold, and the proceeds applied first to the payment of the money expended on the improvements, proceeded upon the hypothesis that the evidence in the case failed to establish the specific terms of the contract; while at the same time there was an undoubted agreement, such as induced the party to enter upon the property, and expend his money upon it, as if it were his own. But the court held that the evidence did not sufficiently establish the terms of that agreement. There was no question, however, that the complainant acted under it in taking possession and expending his money upon the property. As no precise contract was proved that would warrant a decree for specific execution, it was but equity that such a decree should be passed, as would afford the complainant a just remuneration for the improvements which he had without fraud, and in good faith made upon the property.

Relying upon the testimony of the witnesses before referred to, there is in this case clear proof of a contract, definite and specific in its terms. But the force of their evidence is supposed to be repelled by various declarations of the parties, inconsistent with the agreement set up. She told *William Shepherd,* one of the witnesses, that "all the rents were settled, in other words, that she intended to charge no rent," and "she spoke of selling the land." This latter declaration, we have before referred to the period antecedent to the agreement; because it is distinctly affirmed by another witness that when the sale was proposed among the heirs, the mother, as distinctly refused, saying the land was intended for appellant.

At one period she was willing to sign the deed, and directed it to be prepared. But she afterwards determined to consummate the agreement by her will, and in this state of things, she might well say that all rents were settled, or none to be charged. And in the position in which he found himself, the appellant also might well have said in the presence of his mother, "that the property did not belong to him, and he would repair it no more, until he *had a better right*." It was quite natural,

6    v.9

(and the conversation was said to be in pleasantry,) that he should hint as he did, strongly at the caprice of the old lady, in changing from the promised deed, to the last resort of a will. *Doctor Owens* had communicated to him the instructions of the mother; and under every proper restraint of filial duty, the appellant could not well suggest a coercion in her life time of what he could not doubt she would, in good faith, execute by her will, and confirmed by her own reply, " that he had as good right as he ever would have, *until her death.*"

But whatever reasons may have influenced the procrastination and failure to execute the deed, and whatever motive she may have had for desiring to substitute the will in its place, the subsequent caprice of the mother, or any change of intention on her part, could not alter the subsisting contract between them, which was so far executed by both parties, as to require only the execution of the deed on her part to complete it. And such a deed she told her daughter *Susan* she had requested *Doctor Owens* to prepare, who was instructed by the mother to tell *Joseph* to take possession, and she would sign a deed.

As regards the payment of the money as part of the agreement, by the receipt and discharge of the mother upon her guardian account, there is no question. It was paid under this very agreement, that he should have the land. The precise mode of conveyance was designated, and in every *other* particular, the contract was executed. The appellant laid out considerable sums in the improvements, and it is proved to have been done with her knowledge and express approbation. Independent of the meritorious and the valuable consideration before existing in the case, money thus expended in the improvement of the lands, on the faith of the contract, constitutes a consideration on which to ground a claim for specific performance. To eject him now, when all these acts were done in good faith, with her approbation, and in reference to the contract to make him a conveyance of the land, would be to inflict serious injury and injustice, and in the language of the authorities, operate as a fraud upon him, who has performed his part of the contract, in the confidence that the other party would do the same. 2 *Story's Eq.*, sec. 761.

It is further with the observation, that during the whole period after he obtained the possession, *Mrs. Shepherd* never exercised any act of ownership or control over the property; but referred to him on a particular occasion, stated by one of the witnesses, for the payment of the taxes. *Doctor Owens* says "that in all her conversation with him in reference to the land, she continued to convey the impression that she had given it to *Joseph;* and that he afterwards drew her will in strict accordance with her direction to give it to *Joseph;* but by reason of *his* neglect, and the suddenness of her death, it was never executed." And *Welsh,* who proves the possession in *Joseph* for four years, and estimates the improvements he made at $500, says, "she always expressed her willingness to give him a deed whenever proposed; because, as she said to *Samuel Shepherd,* the brother, 'the others had received their share of the father's estate, while *Joseph* had received none.' "

All these declarations confirm the promise of the mother to secure him the land, as the father had devised, and indicate the promise simultaneous with the receipt and discharge for the money due to him, and the possession given of the land. Could these acts have been done by the appellant, without reference to the agreement, and are they such as he would have made, looking to a naked unconditional possession of the property revocable by the death of his mother? If she afterwards contemplated to substitute a will for the deed she was bound to give, it cannot alter his relation to the contract. He might, from relations of duty and affection to her, have rested satisfied with either alternative, without desiring to disturb or counteract her plans during life, conscious, always, that if she did not perfect the agreement by her will, that his claim in equity to the title of the land, always remained to him upon the contract.

This court is never over anxious to grasp at slight circumstances to take a case out of the operation of the statute, nor to allow themselves any latitude of construction, where there is any equivocation or uncertainty in the case presented. They adopt the rule that the contract should be clear and definite,

the acts done should be equally clear and definite, and solely with a view to the agreement being performed.    2 *Story's Eq.*, *sec.* 762.

It may be matter of regret that there ever was a departure from the strict and rigid construction of the statute.    But the embarrassments in fixing the precise character of every variety of agreement in parol, and the circumstances that exclude them from the operation of the statute, have elicited the settled rule by which courts of equity are now governed.    And without any desire to relax them, we think the appellant here has clearly established the contract charged, and also such part performance of it as entitles him to relief.

DECREE REVERSED.