## CATHARINE BOWIE *vs.* NICHOLAS STONESTREET and others.

Declarations of a husband, made to third persons not in presence of his wife and not part of the *res gestæ,* that he had agreed to give a certain portion of his land to his wife in consideration of her uniting with him in a sale of

her maiden real estate for his use, are not admissible against his creditors to establish a specific equitable lien in her favor upon said portion of his land.

To sustain such a claim by proof of such admissions of the husband during coverture, would establish a loose and dangerous mode of setting up secret equities between husband and wife, and would be an effort in direct opposition to the spirit and design of our registry laws.

A contract, which a court of equity can enforce, may be entered into by a husband, for the transfer of property to his wife for a *bona fide* and valuable consideration coming from her.

Where a husband agrees to give his wife an equivalent for her property which she unites with him in selling for his use, compensation for the value of the land sold by her in performance of her part of the contract will be decreed to her, and to this extent she will be regarded as a general creditor of his estate.

Where specific performance of a parol agreement cannot be decreed in consequence of uncertainty in its terms or of the statute being relied on, the court will, if there is no remedy at law, or it is uncertain or embarrassed, or under circumstances of special equity, decree compensation to the extent of the purchase money paid and the value of the lasting improvements.

If the declarations or admissions of a party are to be used for a purpose adverse to his claim, those made at the same time which are in his favor must be also received.

Where a wife has an equitable claim against her husband which she cannot enforce against him during his life in a court of law, there is no statute of limitations which can operate as a positive bar, and less than twenty years will not bar such a claim on the rule of lapse of time, by which courts of equity are governed.

A wife declining to sue her husband, cannot, with propriety, be said to be guilty of gross laches in prosecuting her rights, or of unreasonable acquiescence in the assertion of adverse rights.

Under an agreement by a husband to give his wife an equivalent for her land which she united with him in selling for his use, she can claim, upon the doctrine of compensation, only the value of the land with interest from his death, for during his life he was entitled to the rents, issues and profits of such land.

Under the act of 1854, ch. 230, equity courts may allow amendments of answers.

APPEAL from the Equity Side of the Circuit Court for Prince Georges county.

The bill in this case was filed in the summer of 1848 by the appellees, who were creditors of Robert W. Bowie, deceased, who died in January 1848, for the sale of his real estate to pay

his debts.    Mrs. Bowie, the appellant, who is the widow of the
deceased, was made a defendant to this bill, and by her
answer, filed in December 1848, set up a claim to a portion of
said real estate.    The court below, (CRAIN, J.,) rejected her
claim, and from that decision she appealed.    All the facts of
the case are sufficiently stated in the opinion of this court.

The cause was argued before LE GRAND, C. J., ECCLE-
STON and MASON, J.

*Thomas G. Pratt* and *Thos. S. Alexander* for the appellant,
argued:

1st.    That the agreement of Robert W. Bowie, the husband,
to convey to the appellant, his wife, other lands, as an induce-
ment to her to sell her maiden estate for his use, and the actual
sale by her of her land in consideration of such promise, and
the receipt of the money by him, are fully established by the
proof in the case.    Such an agreement, fully executed on the
part of the wife, is not obnoxious to the provisions of the
statute of frauds.    The statute never permitted any one to
take the equivalent for a contract, and neither execute it on
his part nor return the consideration; for such a proposition
no authority is needed.    It is competent for husband and
wife to make a parol contract during coverture legally binding
upon them.    2 *Kent,* 154.    *Atherley on Marriage Settlements,*
160, 161.    1 *Md. Ch. Dec.,* 525, *Brooks vs. Dent.*    2 *Johns.
Ch. Rep.,* 539, *Livingston vs. Livingston.*    3 *Paige,* 452, *Gar-
lick vs. Strong.*    The execution of the deed for her land was
part performance by Mrs. Bowie of her part of the contract,
and the cases just cited show, that as against Bowie and his
heirs she would have a clear right to a specific execution of
it.    In cases of part performance all the surrounding circum-
stances are to be taken into consideration.    1 *Dallas,* 424,
*Thomson vs. White.*    19 *Eng. Law & Eq. Rep.,* 449, *Hewison
vs. Negus.*    23 *Do.,* 614, *Carter vs. Hind.*    Payment of money
is part performance.    1 *Sch. & Lef.,* 23, *Clinan vs. Cooke.*
Where there is part performance, the courts will labor to

ascertain the terms of the agreement. 1 *Ves., Sen.*, 221, *Attorney General vs. Day.* 1 *Johns. Ch. Rep.*, 281, *Parkhurst vs. Van Cortlandt. Ibid.*, 149, *Phillips vs. Thompson.* 13 *Johns.*, 297, *Abeel vs. Radcliff.* 6 *Ves.*, 467, *Boardman vs. Mostyn.* These cases show that the act of part performance need not necessarily carry in itself proof of the identical agreement. See also on this point 3 *Gill*, 161, *Dugan vs. Gittings.* 10 *Ves.*, 145, *Lady Arundel vs. Phipps.* 5 *Md. Rep.*, 28, *Stoddert vs. Bowie.*

Now will this contract be enforced as against creditors? We submit that they can stand in no better position than Bowie, especially if they are subsequent creditors, and the creditors in this case all became such *after* the part performance by Mrs. Bowie. In *Alexander vs. Ghiselin*, 5 *Gill*, 182, a parol agreement was executed against general creditors and all parties not having specific liens upon the property, and it was there decided that a parol agreement was just as obligatory as a written one in cases not governed by the statute of frauds. Indeed courts of equity were *created* for the very purpose of enforcing these secret trusts. If Bowie had *made the conveyance* at any time before his death, in conformity with the contract, it could not be contended for a moment but that it would have been valid against his creditors and all the world. But what difference can it make that such conveyance was not executed, if the contract and the performance by Mrs. Bowie of her part of it are proved? See 1 *Gill*, 1, *State vs. Reigart*, and 5 *Md. Rep.*, 74, *Albert & wife, vs. Winn & Ross.*

But it is said the declarations and admissions of Bowie are not admissible against his creditors to prove this contract. At the time these admissions were made Bowie and his wife were alone interested in the subject of them; they were made directly against his interest, and there is no pretext for saying that he could have expected to derive any indirect advantage from them. Those made to Dr. Harper, and in presence of Mrs. Ghiselin, are parcel of the *res gestæ*—evidence of the contract itself. In 5 *Md. Rep.*, 232, *Miller & Mayhew, vs. Williamson*, declarations made at the time of passing an

account were received as explanatory of the act. See also 4 *Md. Rep.*, 316, *Crane vs. Gough;* 5 *Do.*, 463, *Handy & Tull, vs. Johnson,* and *McDowell vs. Goldsmith, Ante,* 319.

But again, Mrs. Bowie was brought into a court of equity as *a defendant* by the creditors of the husband, *seeking the aid* of the court for *the sale of the land,* which, by the agreement of their debtor, was to be conveyed to her, and this court will force them who ask its aid to do justice, (65 *Law Lib.*, 336,) and as the land has been sold under the agreement, that Mrs. Bowie shall receive of the proceeds of sale whatever this court shall decide to be equivalent to her interest in the land, the proceeds of "Connick's Farm" should be decreed to be paid to her which was specifically agreed to be conveyed to her. She is not a plaintiff, but stands in the attitude of a defendant, resisting the claim of those who would take this fund from her, and before they can succeed they must show a better right to it than she has. 4 *Md. Rep.*, 316, *Crane vs. Gough.*

2nd. The appellant had no power to enforce the performance of the obligation of the husband during coverture, and consequently, neither lapse of time nor limitations will deprive her of the right of having her claim fairly considered and adjudicated by this court. The statute exempts a *feme covert* from its operation. But again, it is applicable only to cases where the remedy is concurrent at law and in equity. She could not sue at law; her claim was exclusively an equitable one, as specific execution is exclusively to be sought in equity. Laches cannot be imputed to a wife as against her husband; it is not imputed to her even in favor of a stranger. See 1 *Gill,* 1. 3 *Do.*, 161, *Dugan vs. Gittings.*

3rd. If for any reason the appellant should not be entitled to the specific enforcement of the agreement in regard to the "Connick's Farm," she is at least to be regarded as the general creditor of her husband, to the extent of the proceeds of the sale of her maiden land received by her husband under his agreement with her. 1 *White & Tudor,* 527. 1 *Johns. Ch. Rep.*, 132, 150, *Phillips vs. Thompson. Ibid.*, 274, 286, *Parkhurst vs. Van Cortlandt.*

*John M. S. Causin* and *C. C. Magruder* for the appellees, argued:

1st. Independent of all other objections, the lapse of time in this case should bar a recovery by Mrs. Bowie as against the creditors. This claim has slumbered in secret and in guilt for eighteen years, and during all this period the wife set up no claim to any portion of her husband's estate; no one knew of it; Bowie was the ostensible owner of the land and contracted debts, and his creditors trusted him upon the faith of this ownership. It is therefore a stale demand, which equity will not enforce. 2 *Md. Ch. Dec.*, 136, *Hertle vs. McDonald.* 2 *Story's Eq.*, secs. 771, 1520. She could have enforced the contract at any time she saw fit as against her husband by an application to a court of equity. 4 *Md. Rep.*, 316, *Crane vs. Gough.* 1 *Peere Wms.*, 125, *Harvey vs. Harvey. Ibid.*, 618, *Montacute vs. Maxwell.* 2 *Kent*, 163, 164.

2nd. Is the contract proved? So much of the proof as rests upon the declarations of Mrs. Bowie out of the presence of her husband must be conceded to be inadmissible. The averment in the answer of the agreement cannot avail, because it is a substantive allegation, not responsive to the bill. 1 *H. & G.*, 29, *Ringgold vs. Ringgold.* It is only equivalent to parol evidence when responsive. 5 *H. & J.*, 372, *Jones vs. Slubey.* The parol declarations of Bowie are not admissible as against the objecting creditors. His declarations would only be evidence as against those claiming under him,— the creditors claim adversely. He cannot set up a secret trust to defeat creditors who claim adversely. 3 *Philip's Ev.*, 154, *note* 165, and 644, *note* 481. 1 *Greenlf. on Ev.*, sec. 171. 5 *Md. Rep.*, 78, *Winn & Ross, vs. Albert & wife.* 1 *Md. Ch. Dec.*, 526, *Brooks vs. Dent.* 3 *Johns. Ch. Rep.*, 488, *Reade vs. Livingston.* But even if these declarations are admissible, there is no sufficient evidence of the agreement at the time of executing the conveyance for "Enfield Chase," in February 1830. The testimony is not so strong as in the case of *Stoddert vs. Bowie*, 5 *Md. Rep.*, 18, where the specific execution was refused. If Bowie's declarations are admitted in favor

of the claim, they may be met by others against it, (8 *Gill*, 140, *Smith vs. Morgan*,) and he *denies* the agreement, and says that it was never made, all his acts contradict it; he advertises "Connick's Farm" for sale after the alleged agreement; he devises it by his will to be sold by his executors to pay his debts. All these acts are utterly inconsistent with the idea of a secret trust or lien upon it. Mrs. Bowie frequently declared she was anxious her husband should sell this very farm. After his death it was sold by his executor, and she stood by and made no claim, and her silence and acquiescence was a waiver of it if she had any claim. 1 *Greenlf. on Ev.*, sec. 177. If the contract is relied upon as a mere agreement by the husband to convey lands, it could not be enforced if not in writing, as required by the fourth section of the statute of frauds, nor proved by parol. Even a *written* promise after marriage would be nugatory. 12 *Ves.*, 69, *Randall vs. Morgan*, quoted in *Albert & wife, vs. Winn & Ross*, 5 *Md. Rep.*, 74. The policy of the law and the legislation of Maryland is against these secret trusts, and the wisdom of this policy finds illustration in this case.

3rd. The proof, if admissible, would be insufficient to take the alleged agreement out of the statute of frauds on the ground of part performance:—1st, because the contract, conceding all the proof admissible, has not been "*clearly* and satisfactorily made out;" the leaning of the courts is against extending exceptions to the operation of the statute. 2 *Story's Eq.*, secs. 762 to 769. In such cases the law requires the strictest proof of the contract, and the acts of part performance must result solely from the consideration of the contract and be exclusively referable to its performance, and the act of part performance must of itself furnish the evidence of the agreement. 2 *Ambler*, 586, *Gunter vs. Halsey*. 14 *Ves.*, 393, *Daniel vs. Russell*. 9 *Pet.*, 103, *Caldwell vs. Carrington*. 1 *Md. Ch. Dec.*, 123, *Owings vs. Baldwin, et al.* *Ibid.*, 348, *Beard vs. Linthicum*. 4 *Md. Rep.*, 461, *Murndorff vs. Kilbourn*. 5 *Do.*, 32, *Stoddert vs. Bowie*. 1 *Johns. Ch. Rep.*, 131, *Phillips vs. Thompson*. Precisely such a case as the

present has been adjudicated by Chancellor Johnson, in 1 *Md. Ch. Dec.*, 526, *Brooks vs. Dent.* It is not always the duty of courts of equity to decree specific performance, even where the contract and its part performance are proved; it always rests in the *sound discretion* of the court. 2 *Story's Eq.*, sec. 742. 4 *H. & McH.*, 258, *Simmons vs. Hill.* There is nothing in this case to induce the court to execute the contract. 2nd, the alleged act of part performance, viz., the execution of the deed for her land by Mrs. Bowie, was not "entirely and unequivocally done" to carry out the agreement. If she was induced to execute this deed in order to preserve domestic peace and quietude, as argued on the other side and set up in the answer, then *that* was the consideration for her executing it, and not the promise of compensation given by her husband, so that the very proof by which it is sought to sustain her claim defeats it.

4th. But can she be allowed to come in as a general creditor? We say not. A party must succeed in equity according to the claim that he sets up, for that court decrees only *secundum allegata et probata.* Here Mrs. Bowie claims "Connick's Farm" by virtue of a specific contract, and her answer is to be regarded as a bill setting up this specific claim. This is the sole claim we are called into court to resist, and is the only one set up by the appellant, and having failed in establishing this, she must fail *in toto*, and be dismissed from court.

ECCLESTON, J., delivered the opinion of this court.

The claim against the estate of Robert W. Bowie, made by his widow, Catharine Bowie, as a creditor, has been rejected by the decision of the circuit court for Prince George's county, and from that decision this appeal is taken.

Mrs. Bowie's claim is set out in her answer, in which she alleges, that at the time of her marriage she was possessed of a valuable tract of land in her own right, which she inherited from her father. That some years after the marriage, her husband, (being largely indebted,) frequently importuned her to consent to a sale of her land for the payment of his debts,

which she refused to do until he solemnly promised and agreed that he would convey to her other real estate of equal value with hers; that he designated the land held by him called "Connick's Farm" as the land which he would convey in lieu of hers. The answer also states, that overcome by the importunities of her husband and confiding in his promise and agreement, she did consent to join him in the sale of her real estate, which was sold and conveyed accordingly. That the proceeds of the sale were received by her husband and applied to the payment of his debts, but that he never conveyed to her the "Connick's Farm" or any other land in conformity with his promise. And she claims, that the agreement of her husband, in consequence of which she consented to sell her land, constitutes an equitable lien upon the lands of her husband to the extent of the value of her land so sold and applied to the payment of his debts; or, that in virtue of the agreement she is entitled to have the "Connick's Farm" conveyed to her. She also claims dower in the real estate of her husband.

On the 10th of February 1830, for the consideration of $9000, Mrs. Bowie and her husband executed a deed to Robert Ghiselin for the purpose of conveying to him the farm or parcel of land called "Enfield Chase," which descended to Mrs. Bowie from her father.

To establish the lien claimed under the alleged agreement, the appellant relies upon the testimony of Dr. James Harper, Ellen Harper, J. H. Waring, Mary Leonard and Mary Ghiselin.

Dr. Harper speaks of conversations between himself and Mr. Bowie for some two or three years before the sale of "Enfield Chase," in which Mr. Bowie said he had agreed to give his wife "Connick's Farm" if she would agree to join with him in a sale of her land. Mr. Bowie was the first person who informed the witness that Mrs. Bowie had agreed to sell "Enfield Chase" upon condition that he would give her "Connick's Farm." The doctor, in a confidential conversation with Mrs. Bowie, advised her not to sell. Either then or at some other time, Mrs. Bowie informed the witness that she had agreed with her husband to sell "Enfield Chase," and he was to give her in lieu of it "Connick's Farm." The doctor told her it was the worst thing she ever did.

Ellen Harper testifies, that Mr. Bowie made a proposition to his wife to unite with him in a sale of her land for his use, offering to her "Connick's Farm" in exchange, but that she did not accept the offer. This offer, the witness says, was made frequently during the years 1828 and 1829.

J. H. Waring says, that between 1832 and 1835, he had frequent conversations with R. W. Bowie, in which he promised to convey to his wife some property in compensation for "Enfield Chase," which she had sold with him for his use, but he did not mention what particular property he would convey. On other occasions Mr. Bowie said he would not carry out what he had promised, because he thought Mrs. Bowie's dower in his estate was worth more than he got by her.

Mary Leonard's testimony is, that Mr. Bowie made an offer of property to induce Mrs. Bowie to consent to the sale of "Enfield Chase." The witness believes Mrs. Bowie sold "Enfield Chase" with the understanding, that she was to receive an equivalent from her husband. This information was received from Mrs. Bowie, but the witness cannot undertake to say she ever heard Mr. Bowie say so. Mrs. Bowie was advised by the witness not to part with her land, unless at the same time she got an equivalent for it. After the deed for "Enfield Chase" was executed, Mrs. Bowie said her husband had promised to give her an equivalent for her land, but the witness does not recollect that Mrs. Bowie told her what property in particular she was to have under the agreement.

Mary Ghiselin states, that the day on which the deed for "Enfield Chase" was executed, Mr. and Mrs. Bowie went in a carriage to Nottingham for the purpose of executing the deed. The witness accompanied them; and on the road Mr. Bowie promised to give his wife something, (witness thinks it was land,) that would be equivalent to the amount that Mrs. Bowie's land had been sold for. Mrs. Ghiselin cannot say what land was specified as intended to be conveyed in lieu of "Enfield Chase." Several times after the execution of the deed Mr. Bowie repeated the promise, and certainly within six years prior to the examination of the witness, which was on the 16th of November 1849.

From an examination of the proof it will readily appear, that to establish the claim for a specific lien or the right of the appellant to have "Connick's Farm" conveyed to her, the declarations of Mr. Bowie must be relied upon: and such declarations as cannot be viewed in the light of *res gestæ,* or as having occurred when the alleged agreement was made, but such as took place in the absence of the appellant. Indeed, the chief reliance must be on the declarations stated by Dr. Harper. It is true that Ellen Harper proves an offer by Mr. Bowie of "Connick's Farm" in lieu of "Enfield Chase," but it was refused. The witness speaks of this offer as having been repeated frequently during the years 1828 and 1829, without saying, however, that it was accepted.

In the conversations spoken of by Dr. Harper, Mr. Bowie told him he had agreed to give Mrs. Bowie "Connick's Farm" if she would join him in the sale of "Enfield Chase." And Mr. Bowie was the first person who informed the doctor that Mrs. Bowie had agreed to the sale of her land upon condition of her receiving "Connick's Farm" in lieu of it. But no witness, except Ellen Harper and Dr. Harper, speaks of any offer, promise or agreement to convey "Connick's Farm," or any other land or property in particular.

The declarations of Mrs. Bowie, made out of the presence of Mr. Bowie, have been brought into the record as evidence in her favor. Exceptions to these, and also to the declarations of Mr. Bowie, have been filed by the appellees. Her's were not relied upon in argument, and it is unnecessary to notice them further than to say they cannot be used in support of her own claim.

In regard to Mr. Bowie's declarations it is to be recollected, they are not introduced as evidence to sustain a claim against his heirs at law, or against volunteers claiming through or under him, but the rights of creditors are involved. And the effort is to establish the claim of a wife to a specific equitable lien in opposition to creditors through the instrumentality of the husband's declarations, made, not in the wife's presence, not part and parcel of the alleged agreement, but made to a third person, and simply stating what agreement had been made

between himself and his wife. To sustain this claim by proof of such admissions of the husband during the coverture would establish an exceedingly loose and dangerous mode of setting up secret equities between husband and wife. We have seen no adjudged case in which it has been done. And considering this another effort, in direct opposition to the spirit and design of our recording statutes, to open still wider the door, which, by them was intended to be closed, and which has been opened quite wide enough, if not too wide already, we are indisposed to sustain it. Whilst we feel bound by the principles of adjudged cases, so far as to apply them to cases strictly analogous, we are not inclined so to construe those principles as to increase the difficulties and mischiefs intended to be guarded against by the registry laws.

By the act of 1785, ch. 72, sec. 11, where a deed has been executed, the recording of which is made necessary by law, if without any fraudulent design the party claiming under it shall omit having it put upon record according to law, upon application to a court of equity, such court, when satisfied that the party claiming under the deed has a fair and equitable claim to the premises, may order the deed to be recorded; and when done, it is to have, as against the party making the deed, his heirs, executors and administrators, the same effect and consequences, to all intents and purposes, as if the deed had been recorded within the time prescribed by law. But ample provision is made for protecting, against such deed, purchasers without notice, and also creditors who may have trusted the grantor after the date of the deed.

If it was proper to afford protection to creditors under such circumstances, by legislative enactment, why should it not be right to allow their claims to exert an influence in a case like the present; where the wife is seeking to establish a specific lien upon the land of her husband, not by virtue of a deed unrecorded, but depending for its support upon his parol declarations, made not even in her presence, not to a third person authorized to act for her, as trustee or agent, but merely in conversations with her relatives or friends.

Another important consideration is, that during the husband's life, and up to the time of his decease, so far as his creditors had any possible means of judging, he was the real and *bona fide* owner of this very property. He made efforts to sell it; and from the testimony of Fielder Bowie, it appears Mrs. Bowie was anxious that "Connicks Farm" should be sold for the payment of her husband's debts. She requested the witness to urge two different persons to purchase it. And in these conversations with him, which occurred within a year prior to her husband's decease, she made no claim whatever to the property.

Entertaining these views, we do not think the proof sufficient to give the appellant a lien, or any specific claim upon "Connicks Farm."

Whether she has a right, in the character of a general creditor against the estate of her husband, for compensation on account of the sale of "Enfield Chase," is a different question.

A contract which a court of equity can enforce, may be entered into by a husband for the transfer of property to his wife, for a *bona fide* and valuable consideration coming from her. *Livingston vs. Livingston*, 2 *Johns. Ch. Rep.*, 539. *Atherley on Marriage Settlements*, 160, 161 and 163, in 27 *Law Lib.* See also 1 *Gill*, 1.

We have seen that whilst on the road to Nottingham, for the purpose of executing the deed for "Enfield Chase," a promise was made in the presence of Mrs. Ghiselin by Mr. Bowie, that he would give his wife something, (Mrs. Ghiselin thinks land,) which would be equivalent to the amount that Mrs. Bowie's land had been sold for. Although this proof may not be sufficiently definite and explicit to establish such a contract, in regard to what property the husband was to give or transfer to his wife, as would authorize a court of equity to decree a specific performance, nevertheless, we think it shows an agreement which calls for compensation, for the value of the land conveyed by the appellant, in performance of her portion of the contract. The circumstances

will justify this species of relief, under the principle recognized in 1 *White & Tudor's Leading Cases in Equity*, 527, where it is said: "When the specific execution of a parol agreement cannot be decreed, in consequence of the uncertainty in the terms, or of the statute being relied on, the court will, if there is no remedy at law, or it is uncertain or embarrassed, or under circumstances of special equity, decree compensation to the extent of the purchase money paid, and the value of lasting improvements." See the cases there cited, and also *King's Heirs & others, vs. Thompson & wife*, 9 *Peters' S. C. Rep.*, 218 and 9 *Gill*, 41.

The claim of the appellant is resisted, on the ground that the sale of her land was not because of an anticipated and understood consideration to be paid to her by her husband, but was owing entirely to his importunities. There is no proof to sustain this view, unless it is to be found in the answer and declarations of the appellant. It will be seen however, that in the answer, and in her conversations with the several witnesses, whenever she speaks of the importunities of Mr. Bowie, and her consenting to the sale, she invariably either says he promised to give, or was to give her "Connicks Farm," or some equivalent. If her admissions or declarations are to be used for a purpose adverse to her claim, those made at the same time, which are in her favor, must be also received. And looking at the case in this view, we see no sufficient reason for supposing Mrs. Bowie consented to the sale of her land, merely because she was urged and importuned to do so, and not in consideration of the promise by her husband that she should have an equivalent.

The appellees also insist, upon limitation or lapse of time as a bar to the claim. The wife's claim being purely an equitable one, which she could not enforce against her husband during his life, in a court of law, there is no statute of limitations which can operate as a positive bar. Nor do we think the appellant's right can be defeated, under the rules by which courts of equity are governed in relation to lapse of time, or the staleness of claims. Less than twenty years,

at all events, should not be sufficient under the circumstances of this case. To say that because a wife does not institute proceedings promptly against her husband, to enforce against him her equitable claim, she is to be considered as guilty of such gross laches in prosecuting her rights, or of such long and unreasonable acquiescence in the assertion of adverse rights, that equity will refuse to interfere in her behalf, is to establish a principle but little calculated to preserve the peace and harmony which should exist between husband and wife. What is said in 1 *Story's Eq.*, sec. 1520, in regard to the effect of lapse of time, or the staleness of claims, in a court of equity, we do not think is properly applicable to such a case as this. A wife declining to sue her husband, cannot, with propriety, be said to be guilty of gross laches in prosecuting her rights, or of unreasonable acquiescence in the assertion of adverse rights.

In *Dugan vs. Gittings*, 3 *Gill*, 161 to 164, it was insisted, that by the lapse of more than three years the claim for rents was barred; but this defence was not sustained, because the claim was purely an equitable one, and could not be enforced at law. On page 164, the court say, "but we place our opinion on the ground, that as the bill was instituted by the appellees, within less than twenty years from the period at which their right of action accrued; and as their claim for an account and payment of the rents was incidental to, and consequent upon, their assertion of title to the property, they are not barred by either limitations or laches."

Whatever may be the rule elsewhere, we think the decision in *Dugan vs. Gittings*, sanctions the view we have taken in this case; as the wife certainly could have no means of enforcing her claim against her husband, in a court of law, during his life.

Under the doctrine of compensation, the appellant can claim but nine thousand dollars, with interest thereon from the death of her husband. According to the evidence, he was only to give her an equivalent for the sale of her land. As he was entitled during his life to the rents, issues and profits

of that estate, if under the agreement he had conveyed or transferred property to his wife, it would have been no violation of the terms of that contract, but perfectly consistent with them, if he had reserved to himself for life, the income thereof, securing to her the enjoyment of the property itself at his decease. Her land sold for $9000, and there is no proof showing it was worth more at the decease of Mr. Bowie. Equitable compensation, therefore, for the sale of her land, can entitle her to no more than $9000, with interest from the decease of her husband. To that extent she is to be considered as a general creditor against the assets of the estate.

The right of the appellant to claim compensation, as a general creditor, has been resisted, on the ground, that her answer for such a purpose is to be considered as a bill, and it does not make or present such a claim.

In *Parkhurst vs. Van Cortlandt,* 1 *Johns. Ch. Rep.,* 273, the bill prayed for the specific execution of an alleged agreement. Chancellor Kent thought the contract was not sustained by proof sufficiently explicit to authorize a decree for specific performance, but, nevertheless, he passed an order for the purpose of making an allowance to the complainants for beneficial and lasting improvements made by them upon the land. See also *Watt vs. Grove,* 2 *Schoale & Lef.,* 492, 513.

Thinking it proper however to send this case back for further proceedings, we deem it unnecessary to decide whether the answer is defective in the particular alluded to, because if it is so, under the act of 1854, ch. 230, it would be proper for the circuit court to allow the appellant to amend her answer. And that would not only delay her without benefiting the appellees, but would operate to their prejudice, and likewise to the injury of all other creditors, by procrastinating the final distribution of the assets, which we presume the appellees would not desire.

The order of the court below is right, so far as it directs

55      v.6

an allowance in favor of the appellant, for dower, out of the proceeds of the land called "Connicks Farm."

Without reversing or affirming we will remand this case under the act of 1832, ch. 302, for further proceedings, that the principles announced in this opinion may be carried into effect; for which purpose a decree will be signed by this court.

*Cause remanded.*

.   MASON, J., dissented, and delivered the following dissenting opinion:

I do not concur with the majority of the court in the opinion they have filed in this cause.   My opinion is, the claim of the appellant, in neither of its aspects, ought to be recognised by a court of chancery.

The doctrine sustaining secret equities and agreements between husband and wife, and the disregard which has been shown to our registry laws, have been carried much too far already by courts of justice, and instead of going further in this departure from the earlier and more wholesome adjudications upon this subject, we should rather endeavor to retrace our steps, and return to what the laws were designed and supposed to be by those who originally enacted and interpreted them.

The principles contended for by the appellant, and sustained by a majority of the court in this case, are, in my judgment, highly injurious to the public interests, and in derogation of the rights of creditors, although I must confess they have been sanctioned by high judicial authority, beyond the limits of our State.   But by those authorities I do not consider myself bound, as I would be by an express adjudication in our own State.

I think the decree of the circuit court ought to be affirmed.