Mr. Justice Hagner
delivered the opinion of the court.
This suit was brought in August, 1873, to recover $375 *243 for hauling for the defendant 750 perches of bluestone at 50 cents per perch. A verdict in favor of the plaintiff was rendered by a jury in July, 1876. A new trial was after-wards granted, and the case was then referred to a special referee, who examined a number of witnesses on both sides and reported in favor of the plaintiff. On motion, judgment was rendered on this finding, and the case comes here upon exceptions to the report of the referee.
The defendant, in support of his plea, “ not indebted,” relies upon a receipt, executed since the performance of the work, in the following words:
“Received of Gilbert Vanderwerken, $164.50, to balance in full for all account for hauling stone for use on the work of construction on the Baltimore and Potomac Railroad, for him and for the firm of Yanderwerken & Co., and I do hereby release him and them from all obligation on account of the contract for such hauling.
“26th July, 1872. J. P. CoNnell.”
Although the receipt is not a technical release under seal, its effect must be to defeat the claim of the plaintiff', unless its conclusiveness is interfered with by extraneous proof. The plaintiff introduced evidence to show that, notwithstanding the fullness of its language, it was not designed as an acquittance of the claim sued on, but that the same was. expressly excepted by the parties at the time from the operation of the receipt.
It appears that Yanderwerken & Co., in July, 1876, agreed with McLaughlin, Reynolds & Co., contractors, to furnish the stone required for the tunnel, bridges, &c., on the line of the Baltimore & Potomac Railroad, within the city of "Washington; and, in the same month, John P. Connell & Bro. contracted in writing with Yanderwerken & Co. to haul for a designated price the stone which Yander-werken & Co. had thus agreed to furnish to the contractors for the railroad.
By the first-named contract Yanderwerken & Co. were to be paid for such stone only as it should be built into the *244 work and measured by the engineers; and Connell & Bro. were apprised of this agreement, and were to be paid for hauling such stone only as Vanderwerken & Co. were to receive pay for. Vanderwerken & Go. failed to comply with their contract, and the defendant, who was their bondsman, took their place in the contract. The firm of Connell & Bro. was also dissolved; and the plaintiff alone, as he insists, made a new contract with the defendant by which he was to receive pay at fifty cents a perch for all stone that might be hauled to the tunnel, whether the same was used by the engineers or not.
, The plaintiff further testified before the referee that when he came to a settlement with the defendant, on the 26th of July, 1872, and after he had finished all the hauling, the defendant’s agent prepared the receipt of that date, and presented it to him for his signature; that on examination he found, that although the defendant pi*oposed to pay him the balance only that was due him for hauling the stone which had been actually used on the railroad, yet the receipt in terms was an acquittance for all hauling done, including the stone which had not been used by the engineers but remained on the ground near the line of the work; that he thereupon re fused to sign the receipt and reminded the agent of the defendant that by his contract with the defendant he was to receive pay for all the stone he hauled, whether it was used or not; that the defendant’s agent thereupon proposed to the plaintiff that if he would sell for the defendant all the unused stone along the line of the work, including the spalls or chippings from the stone, he might pay himself from the proceeds for hauling the unused stone at the rate of seventy-five cents a perch, and, after deducting his pay at that rate, pay over the balance to the defendant; that the plaintiff agreed to this proposition, and signed the receipt upon the understanding that he was- in this way to be paid for hauling the unused stone, which he testified amounted to 750 perches. He further testified that when he attempted to make sale of the unused stone and spalls under this agreement, uhe found that the same had already been sold to *245 another person, and that he would be unable to realize his claim from that source.
The first question is, whether this testimony was proper to be considered by the referee to explain or defeat the force of the receipt.
The principle invoked by the plaintiff in support of its admissibility is well established.
“ It is a familiar principle that receipts acknowledging the payment of money may be explained or contradicted. This constitutes an exception to the general rule giving a conclusive effect to written evidence; and it has been properly said that the exception was introduced for the general security and convenience to protect mankind from fraud.” 1 Green-leaf on Evidence, sec. 305.
Thus it has been held admissible to show that the receipt was produced by false representation; as in the case of Michaels vs. Post, 21 Wallace, 398, where a creditor was induced to execute an acquittance in full of his claim by false representations of another creditor, who thereby obtained an unjust preference. Or to show that a receipt absolutely admitting the payment of a sum of money was executed upon an agreement that something should be received in lieu of the money consideration expressed in the receipt; as in Shepherd ns. Bevin, 9 Gill, 36, where the distributee of an estate executed an acquittance in full of his share in the personal estate of his father, he was permitted to show that no money passed, but that it wras agreed that a credit should be given to him contemporaneously upon the purchase of an interest in land. So in Cramer vs. Shriner, 18 Md., 144, where it was held that it was competent for the plaintiff to pi’ove by parol that a written receipt, which in terms was for iC all store, saddler’s bill to date, and all wheat delivered at Linganore and Ceresville Mills to date ” was a settlement of all accounts, between the parties, except as to a quantity of grain, which it was agreed at the time was not to be comprehended by the terms of the receipt.
.Upon the principle of these cases, we are of opinion that the evidence offered was admissible to explain the receipt- *246 Its object was to show that when the plaintiff acknowledged full satisfaction of all claims against the defendant, he only-designed to admit that this satisfaction consisted as well of the payment of the $164.00 as of the agreement to transfer to him the control of the stone which he was authorized to sell, and out of which he was to pay himself the balance due him.
The only question remaining, then, is as to the effect of the evidence thus offered. In our opinion it sustains the contention of the plaintiff'. Apart from the plaintiff’s own positive oath to this effect, we have the fact that a quantity of stone was hauled by him for the defendant for which he has never been paid; and, when this account was presented to the defendant, and also to his son, who was his general agent, neither of them denied the performance of the work, nor gave any other satisfactory reason for not making the payment. The quantity of hauling thus remaining undischarged is positively vouched for by the plaintiff, and he is effectively supported in his estimate of the balance due by two witnesses, and by the circumstance that neither the defendant nor his agent questioned the correctness of the charge in that respect.
A careful examination of the testimony has failed to show us any reason why the judgment should be disturbed, and we are of the opinion that it should be affirmed.