THE FRANKLIN BANK OF BALTIMORE *vs.* THE PENNSYLVA-
NIA, DELAWARE AND MARYLAND STEAM NAVIGATION COM-
PANY.—*December,* 1839.

In general, the declarations of third persons are inadmissible evidence,
though the rule which excludes them, does not apply to the authorised de-
clarations, or representations of an agent.

The rule arising from the relation of principal and agent is, that the decla-
rations or representations of an agent, made in the course of, and accom-
panying the transaction which is the subject of enquiry, and acting within
the scope of his authority, may be proved as part of the *res gestæ.*

But the rule does not extend to declarations, or representations, made after
the transaction, though in relation to it;—such declarations constituting
no part of the *res gestæ,* and not being binding on the principal.

The credit of a witness cannot be impeached, by proving antecedent state-
ments, inconsistent with his testimony upon the stand, without first inter-
rogating him upon the subject on cross examination, that he may have an
opportunity of explaining, what might otherwise appear contradictory.

A party cannot discredit his own witness, or shew his incompetency, though
he may call other witnesses to contradict him as to a fact material to the
issue, in order to shew how the fact really is.

APPEAL from *Baltimore* County Court.

This was a special action on the case, in which the plain-
tiffs below, the appellants, declared against the appellees.

1st. Upon the delivery of a package of bank notes by the plaintiffs to the defendants, at their special instance and request, to be carried from *Baltimore* to *Philadelphia.* 2nd count like the first, with an additional allegation, that the defendants were to deliver the said bank notes to the plaintiffs at *Philadelphia. Breach,* that the defendants neither safely nor securely carried them to *Philadelphia,* nor delivered them there, but conducted themselves so negligently in the premises, that the same were lost. *Plea,* that the defendants did not undertake in manner and form as alleged, &c.

At the trial the plaintiffs, to support the issue on their part, gave in evidence to the jury, by *James L. Hawkins,* cashier of the *Franklin Bank of Baltimore,* the plaintiffs, that on the morning of the 18th November 1834, he took a sealed package addressed to *J. B. Mitchell,* cashier of the *Mechanics' Bank of Philadelphia,* containing bank notes amounting to $3,960, which the witness had himself counted, before he sealed said packet to the office of the defendants in the city of *Baltimore,* and requested Col. *Thos. Sheppard,* the agent of said defendants, to take charge of the same, in order to its being conveyed by the steam boat line of said defendants, to the person to whom it was addressed at *Philadelphia.* That said *Sheppard* being at the time occupied by business at the office, gave witness a key, and directed a negro man in the employment of defendants, to go with witness and show him the trunk on board said boat, in which packages of value were put; requesting witness to place said package of bank notes in said trunk or chest, which witness accordingly did, and having locked the chest, returned the key to said *Sheppard.* That witness wrote to said *Mitchell* on the 17th November, advising him of his intention to send a package containing the said sum in notes, by the boat of next morning, which letter was mailed on the 17th or 18th. The witness further stated, that he had frequently sent packages of bank notes to the *Mechanics' Bank of Philadelphia* by the same conveyance, which had always arrived safely; that he never paid any freight or compensation to the defendants for their conveyance, nor had any

such freight ever been demanded by them or any of their agents;—that the package in question was never received by the *Philadelphia* bank or any of its officers, but the witness supposes was stolen. The plaintiffs further offered in evidence the proceedings under a commission executed in *Philadelphia*, with the interrogatories, and the depositions taken under it.

These it is thought unnecessary to introduce, as those portions of the evidence upon which the questions decided arose, are recapitulated by the judge who delivered the opinion of this court.

In the progress of the trial, the defendants' counsel objected to the admissibility of a part of the plaintiffs' proof, and the court below (ARCHER, C. J. and PURVIANCE, A. J.) sustained the objection and excluded it.

The plaintiffs excepted, and the verdict and judgment being against them, they prosecuted the present appeal.

The cause was argued before BUCHANAN, C. J., STEPHEN, and CHAMBERS, J.

By MEREDITH for the appellants, and
By McMAHON for the appellees.

BUCHANAN, C. J., delivered the opinion of the court.

The suit is to recover the value of a package of bank notes, which it is alleged, the defendants undertook to carry safely from *Baltimore*, and deliver at *Philadelphia*, and which is charged to have been lost by reason of gross negligence.

It is only necessary to take notice of those portions of the evidence offered at the trial, upon which the questions presented arise. It was proved by the cashier of the plaintiffs, that on the 18th of November 1834, he took the package in question, addressed to *J. B. Mitchell*, cashier of the *Mechanics' Bank of Philadelphia*, to the office of the defendants in *Baltimore*, and requested their agent at that place to take charge of it for the purpose of its being conveyed by their steam boat line, to the person to whom it was addressed at *Philadelphia;* that the agent gave him the key of a trunk on board the boat,

in which he requested him to place the package, which he did; and having locked the trunk, he returned the key to the agent. It was further proved, that the package was never received by the *Mechanics' Bank of Philadelphia*, or by any of its officers. The plaintiffs also offered in evidence a commission issued to, and executed in *Philadelphia* with the depositions taken under it; among which is a deposition of *J. B. Mitchell*, the cashier of the *Mechanics' Bank of Philadelphia*, taken on the 24th of June 1835, and another, the deposition of *Nathan Davidson*, proved to have been the agent of the defendants at *Philadelphia*, taken on the 8th of July 1835. Both of whom were produced and examined on the part of the plaintiffs. *Mitchell* swears, among other things, that he was absent from *Philadelphia* from about the 10th until the 27th of November 1834; that on his return he found two letters at the *Mechanics' Bank*, addressed to him from the cashier of the plaintiffs; the first of the 17th of November 1834, advising him of the forwarding of the package by the steam boat line of the defendants, which had been received at the *bank*, and opened in his absence, which it was the duty of the president to do; and the *second* of the 21st of the same month, requesting him to make inquiry at the office of the steam boat line, by which the package had been forwarded; that within a day or two after his return, he applied at the office, to *Davidson* the agent of the defendants, for the package, and thinks he showed him the letter from the cashier of the plaintiffs of the 21st of November 1834, who told him, that on the evening of the 18th of November 1834, there were a number of persons in the office, when the trunk was opened by the clerk, and the packages handed out by the porter to the clerk; that there was a package addressed to *Mr. Mitchell;* but whether to *Mr. Mitchell* the witness, or to a dry goods merchant of that name, he did not know, nor did he know that it contained bank notes; and that the package was thrown upon the desk, and which was the last that he, *Davidson*, knew of it. But he says that he does not recollect whether what *Davidson* said in that conversation, was spoken as of his own knowledge, or as derived

32    CASES IN THE COURT OF APPEALS

Franklin Bank of Baltimore *vs.* P., D. & M. Steam Navigation Co.—1839.

from his clerk: that the cashier of the plaintiffs had been in the common practice of forwarding his packages by that steam boat line, which were sometimes sent to him by the porters of the steam boat office; that at other times he called and received them himself, and that sometimes the porter of the bank was sent down to the steam boat office for them. And it appears from other evidence taken under the commission, that a porter to the *Mechanics' Bank* had before been twice sent to the office of the defendants for the package in question, but failed to obtain it. *Davidson,* in his answer to the second interrogatory propounded on the part of the plaintiffs—"Have you any knowledge or recolleetion of a package directed to *J. B. Mitchell,* esquire, cashier of the *Mechanics' Bank of Philadelphia,* being in a trunk or chest kept as the depository of small packets on board the steam boat belonging to the *Citizens' Union Line,* which arrived at *Philadelphia* from *Baltimore* with passengers in the afternoon or evening of the 18th of November 1834? If yea, was or was not the said package taken from the said trunk or chest by the porter of the defendants, or by some other and what person in their employment, and by him delivered to their agent or clerk, and what afterwards became of said packet? State your whole knowledge respecting said packet fully and particularly"—swears, that "he has no knowledge whatever of the matters inquired of in that interrogatory," which is repeated in different parts of his deposition. And in the course of his examination he says, among other things, that he thinks, and is positive, that on the night of the 24th November 1834, he received a letter from the agent of defendants in *Baltimore,* informing him that an officer of the plaintiffs had, on the 18th of the same month, put into their chest a package of money for the *Mechanics' Bank of Philadelphia,* which the plaintiffs had been advised by letter had not come to hand, and requesting him to inquire into the affair, and that that was the first knowledge he had of the matter; which was confirmed on the same evening by the president of the *Mechanics' Bank,* in a conversation with him. But as soon as he received the letter of the agent in *Baltimore*

of the 24th of November 1834, he enquired of the clerks in the employment of the defendants, whether they had seen such a package? who replied they had not, and that he had had no other conversation with any of the clerks on the subject. That some eight or ten days afterwards, the cashier of the *Mechanics' Bank* (*J. B. Mitchell*) called on him, and enquired if he had heard any thing of the lost package; that he told him he had not, and that he had had no communication since that time, with him or any one else on the subject. Those two witnesses then, *Mitchell* and *Davidson*, are clearly at variance with each other, and what they have respectively sworn to, cannot be reconciled. Those parts of the deposition of *Mitchell*, which state the declarations of *Davidson*, the agent of the defendants at *Philadelphia*, in reference to the arrival of the package, and his account of what became of it afterwards, being objected to by the defendant's counsel, they were rejected by the court, as inadmissible,—which presents the question, whether proof of *Davidson's* declarations or admissions, made at the time they were, should have been permitted to go to the jury, to charge the defendants.

In general, declarations or statements by third persons are inadmissible; that however is not an universal principle, and does not apply to the authorised declarations or representations of an agent. The rule springing from the relation of principal and agent being, that the representations or declarations of an agent, made in the course of, and accompanying the transaction which is the subject of inquiry, and acting within the scope and limits of his authority may be proved. But it does not extend to declarations or representations made *after* the transaction, though in relation to it; and the principle upon which the declarations or representations of an agent, within the scope of his authority, are permitted to be proved, is, that such declarations, as well as his acts, are considered and treated as the declarations of his principal. What is so done by an agent, is done by the principal through him, as his mere instrument. So whatever is said by an agent, either in the making a contract for his principal, or at the time, and accom-

panying the performance of any act, within the scope of his authority, having relation to, and connected with, and in the course of the particular contract or transaction in which he is then engaged, is in legal effect, said by his principal, and admissible in evidence; not merely because it is the declaration or admission of an agent; but on the ground, that being made at the time of, and accompanying the contract or transaction, it is treated as the declaration or admission of .the principal, constituting a part of the *res gestæ*, a part of the contract or transaction, and as binding upon him as if in fact made by himself. But declarations or admissions by an agent, of his own authority, and not accompanying the making of a contract, or the doing of an act, in behalf of his principal, nor made at the time he is engaged in the transaction to which they refer, are not binding upon his principal, not being part of the *res gestæ*, and are not admissible in evidence. But come within the general rule of law, excluding hearsay evidence; being but an account or statement by an agent, of what has passed or been done or omitted to be done, not a part of the transaction, but only statements or admissions respecting it—and if they relate to any thing resting in his knowledge material to either party, it must be proved by his testimony, and not by evidence of his mere assertions, which is no proof of it. This distinction between the declarations or admissions of an agent, accompanying the making of, and constituting therefore a part of the contract or transaction, and such as are made at another time, runs through the books, and is clearly settled. *The City Bank of Baltimore vs. Bateman, 7 Harr. & John.* 104. *Langhorn vs. Allnutt,* 4 *Taunton,* 511. *Masters vs. Abraham,* 1 *Esp.* 375. *Fairlie vs. Hastings,* 10 *Vesey Jr.* 123. *Betham vs. Benson,* 5 *Eng. Com. Law. Rep.* 454. *Westcott vs. Bradford,* 4 *Washington C. C. Rep.* 492. 2 *Starkie on Evid.* 60, 61. In *Biggs and others vs. Lawrence,* 3 *Term. Rep.* 454, *Justice Buller* permitted a receipt given by an agent for goods directed to be delivered to him, to be read in evidence against the principal. But that decision is condemned by *Dallas,* Chief Justice, in *Betham vs. Benson,* 5 *Eng. Com.*

*Law Rep.* and disapproved of in *Fairlie vs. Hastings,* 10 *Vesey Jr.*; and in *Boarman vs. Radinius,* 7 *Term. Rep.* 665, it is said to have passed without much observation, and that *Lord Kenyon,* who was on the bench at the time, had since frequently ruled the contrary, without its having ever been questioned. *Biggs and al. vs. Lawrence,* may therefore be considered as overruled.

The evidence offered in this case and rejected by the court below, is of a conversation alleged to have taken place between *Davidson,* the agent of the defendants, and the witness, some eight or ten days after the transaction to which it relates, and after the loss of the package in question, when the agency for the delivery of it to the person to whom it was addressed had ceased, not constituting a part of the transaction, but a subsequent account only of what had before occurred respecting it. It cannot therefore be treated as a statement or admission by the defendants, and as such binding upon them, and admissible in evidence; but must be considered as a mere narrative of facts by *Davidson,* of his own authority, to be proved by him on oath, if within his own knowledge, or by some other witness, and not by evidence of his statement of them, which is forbidden by the general rule of law in relation to hearsay evidence. That portion therefore of *Mitchell's* evidence, which was objected to at the trial, was properly rejected, as inadmissible to bind or affect the defendants.

But it has been argued, that it should have been received to contradict the testimony of *Davidson,* which would have been altogether irregular.

The credit of a witness may be impeached by cross examination, or by general evidence to affect his credit; or by contradictory evidence, or proof of what he has antecedently said, which is inconsistent with his testimony on the stand. To prepare the way, and as a foundation for which latter mode of impeaching his credit, he should be asked the question on cross examination, that he may have an opportunity of explaining what might otherwise appear to be contradictory, which was not done.

Looking to the order of time in which those two witnesses, *J. B. Mitchell* and *Davidson* were examined—the *first* on the 24th June 1825, and the *other* on the 8th of July following—*Davidson's* deposition would have the aspect of evidence, contradictory of what *Mitchell* had before sworn to, in relation to the statement concerning the package ascribed to him.   But whether if *Davidson* had been called and examined on the part of the defendants, and on cross examination, questioned in relation to that statement, the evidence of *Mitchell* which had been given before, could have been properly resorted to, for the purpose of discrediting him, is not material in this case.   It is a general rule of law founded on reason and good sense, and to effect the ends of justice, that a party cannot discredit his own witness, or show his incompetency; though he is not bound by whatever his witness may say, who, under a defect of memory, may make statements adverse to his interests.   Therefore, if the witness gives evidence against him, he may call other witnesses, not to discredit him generally, but to contradict him as to a fact material to the issue, to which he has deposed, in order to show how the fact really is, and it was upon that principle, that in *Friedlander vs. The London Assurance Co.*, 24 *Eng. Com. Law Rep.* 193, cited and relied on by the counsel for the plaintiffs, the evidence proposed was determined to be admissible, the object of which was, not to discredit the witness, by evidence of what he had previously said, but to show what the *facts* really were, by contradicting him as to the facts, to which he had deposed. But this is not like that case.   Here it is attempted to be shown, that the plaintiff should have been permitted, not to contradict his own witness, by proof of what the facts were in relation to the lost package, contrary to what he had sworn, but to discredit him, by evidence of what he had before said respecting it; which cannot be.   The judgment must therefore be affirmed.

JUDGMENT AFFIRMED.