## FEIGLEY *v.* BALTIMORE TRANSIT COMPANY

[No. 189, October Term, 1955.]

2

*Decided July 31, 1956.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*W. Hamilton Whiteford* for the appellant.

*Hamilton O'Dunne,* with whom were *George P. Bowie* and *J. Sarsfield Sweeny* on the brief, for the appellee.

BRUNE, C. J., delivered the opinion of the Court.

The plaintiff, Fannie Feigley, was injured while a passenger on a street car of the Baltimore Transit Company as a result of a sudden stop which threw her to the floor as she was walking to an exit preparatory to leaving the car at the next intersection. The plaintiff brought suit to recover damages, and the case was tried before Judge Niles and a jury. The defendant produced the testimony of the motorman and of two disinterested witnesses to show that the sudden stop was due to a motorist cutting in ahead of the street car. The trial resulted in a verdict and judgment for the defendant, and the plaintiff appeals from that judgment.

There were no exceptions to the court's instructions, and the only questions presented by this appeal arise from rulings on evidence.

A day or two after the accident a "representative" of the

Transit Company, whose exact position with that Company is not shown, visited and interviewed the plaintiff and her daughter, who had been on the street car with the plaintiff. He obtained a statement of their version of the accident, which he took down and which the daughter signed.

At the trial the daughter was asked what other conversation took place with the Transit Company's representative to which she replied: "He told us that we were on the street car and they would be responsible for everything, and said the fact they didn't know, the conductor said a car ran in front of him which caused him to put the emergency on——." The defendant then interposed an objection, which was sustained; but after discussion at the bench between the Judge and counsel out of the hearing of the jury, the Judge said that he would hold the matter and rule on it later.

On cross-examination, Miss Feigley, the daughter of the plaintiff, was handed the statement and identified her signature to it and was then asked to read it. She read it over to herself, said "No" when she came to some passage and was then questioned about the statement, and a part of it was read aloud to her. She said that the statement was inaccurate in two respects and that another part of it was not worded as she would have worded it. The inaccuracies in the written statement which she pointed out were assertions (a) that the motorman had put her mother in a seat after her fall, and (b) that her mother had not reached the center exit before the fall. The portion which the witness said she would have worded differently related to the interval between the first "stopping jerk" and the second. The second was the one which caused the witness and the plaintiff to fall. Both in her direct testimony and on cross-examination in explaining her criticism of the wording of the statement, she asserted that the car had great momentum between the first and second "stopping jerks." In the written statement it was said that "the car went along normally and when it neared our stop we got up * * *." No mention was made of momentum, but the two "stopping jerks," the second of which was the more severe, were mentioned.

Following this cross-examination, the plaintiff's counsel

again sought to go into the entire conversation between the Transit Company's representative and Mrs. and Miss Feigley. The Court refused to permit him to do so. Plaintiff's counsel followed this up with a proffer to show that Mr. Deibel, the Transit Company's representative, in connection with the taking of the statement had said "that the motorman did not know who the car was that had cut him off, that if they did know who it was that that person would be jointly responsible with the Transit Company, but inasmuch as they did not know who it was the Transit Company would be liable, would take care of her expenses, and for her to let him know from time to time as they went along what the expenses were, and that on subsequent conversations Mr. Deibel told the witness —that is as far as it goes with this witness." The Court rejected the proffer on the ground that the mere fact that the statement was taken by a representative of the Transit Company did not show authority to make promises on its behalf, and also pointed out that the witness had testified that the statement was correct except as to the motorman putting the plaintiff on the seat and in not mentioning the speed of the car. (No reference was made to the other alleged inaccuracy as to whether the plaintiff had or had not reached the exit.) The plaintiff urged "that the promises of the investigator with respect to the assumption of liability of the Company could possibly be construed as consideration or inducement for making the statement."

The plaintiff claims that the ruling of the Court in excluding the proffered testimony is erroneous (1) because the offer to assume liability was an admission of liability, (2) because the entire conversation should have been admitted under the rule of verbal completeness, and (3) that it was admissible to explain inconsistencies between what the witness said in her signed statement and what she said in court. In support of the latter contention she restates without substantial change or elaboration her argument that it is "conceivable" that the promises made by the Transit Company's representative with regard to the assumption of liability and payment of expenses were made as an inducement for the plaintiff and her daughter making the statements and she also asserts here that these

promises would have a tendency to lull the plaintiff and her daughter into a false sense of security in making and signing the statements and to "ease their diligence to make certain that their statements were recorded with exactitude".

1. *Alleged Admission of Liability.* The appellant's argument based upon the representative's admission of liability and offer to pay expenses encounters at once the difficulty of showing that the representative was authorized to make any such admission on behalf of the Transit Company. As the trial Judge noted and as we have already pointed out, the representative's exact position with the Company is not shown. The appellant contends that "A claims representative sent out by. the Transit Company would be clothed with at least the apparent authority to discuss questions of liability and settlement with claimants as this is the very essence of his duties." She then argues that the acts of an agent within the apparent, but not real, scope of his authority are binding upon his principal where loss would otherwise result to one who in good faith relied on such apparent authority. The applicability of this last argument is not apparent. If we assume that the representative had apparent authority to discuss liability and settlement, and that the plaintiff relied upon it, there is nothing to show that she suffered or would suffer loss as a result of such reliance.

This brings us back to the question whether or not the representative was in fact authorized to make an admission of liability on behalf of the Transit Company. No evidence was offered to prove such authority, other than the bare facts that he interviewed the plaintiff and her daughter and took a statement from them and in so doing he was acting as an agent for the Transit Company. This is not sufficient for the purpose. See *New York and Baltimore Transportation Line v. Baer,* 118 Md. 73, 84 A. 251, in which it was held that a statement by the local freight agent for a railroad of the justness of the claim of consignees of a shipment and of the willingness of his company to pay it was not admissible in evidence where it was not shown that he had the authority to pay, settle or even admit the payment of a claim by the company or that he was permitted by the company to hold himself out as

having such authority (and later testified that he did not have such authority); *Hoffman v. Cumberland Valley R. R. Co.,* 85 Md. 391, 37 A. 214, cited in the *New York and Baltimore Transportation Case,* which held proof of authority of a station agent to make a contract involving liability beyond the carrier's own line to be necessary; *American Towing Co. v. Baker-Whiteley Coal Co.,* 111 Md. 504, 75 A. 341, in which a statement by the secretary of a corporation that a hawser used by the corporation in towing certain scows was an improper one and that the loss was due to its use, was held inadmissible; *Potts v. Armour & Co.,* 183 Md. 483, 39 A. 2d 552 (cited by both parties), in which it was held that statements by employees of the defendant, including its local plant manager, made to the injured person that everything would be taken care of, where the plant manager testified that claims had to be investigated and reported to the home office and that he had no "specific authority" to settle claims were legally insufficient to be considered as an assumption of liability by the defendant.

In the *Potts Case,* the Court cited *Billotti v. Saval,* 165 Md. 563, 168 A. 890, in support of the rule that a definite promise to pay damages made by a person involved in an accident may constitute an implied admission of fault. A similar ruling was made in *Brown v. Patterson,* 141 Md. 293, 118 A. 653, in which the defendant made actual payments for medical expenses of the plaintiff. Both of these cases, however, involved defendants who were personally involved in the accidents and their own acts or statements, not the statements of agents who were not shown to have authority to make admissions to bind their principals.

On the lack of proof of authority of the agent to bind the principal by an admission of liability or of facts showing liability see also *Dietrich v. Baltimore & Hall's Springs Railway Co.,* 58 Md. 347, in which a statement made by the driver of the defendant's horse car made a half hour after the accident was excluded, and the recent case of *State, use of Parr v. Board of County Commissioners of Prince George's County,* 207 Md. 91, 113 A. 2d 397, where it was held that a bus driver was not such an agent of the Board of Education

of the County as would have authority to bind that Board by a subsequent statement made an hour and a half after the happening of the accident and not constituting a part of the *res gestae*. The conversation between the Transit Company's representative and the plaintiff and the plaintiff's daughter in the present case took place a day or two after the accident and was clearly not a part of the *res gestae*. Indeed, the representative had no personal knowledge of the accident whatever. (See *Mechem, Outlines of Agency,* 3rd Ed., Sec. 481).

In discussing the subject of admissions by an agent, *Mechem* also says, in Sec. 478 of the work cited: "Anyone may, in general, confess his own defaults, and make admissions against his own interest; but no one ordinarily can confess somebody else's fault, or make admissions against someone else's interest. The ordinary agent or servant cannot usually be deemed authorized, expressly or by implication, to make admissions of this sort against his principal, * * *."

See also *Restatement, Agency,* Sec. 288, which states:

"(1) Authority to do an act or conduct a transaction does not of itself include authority to make statements concerning the act or transaction.
"(2) Authority to make statements of fact does not of itself include authority to make statements admitting liability because of such facts."

There is no proof of any express authorization of the representative of the Transit Company to make an admission of liability which would bind that Company, and we think that the fact that he was employed to investigate the claim is not enough of itself to support an implied authorization to make such an admission. Even if he was authorized, as the appellant says, to discuss liability, that does not show that he was authorized to admit it on behalf of his principal.

2. *Verbal Completeness.* The appellant contends that whether or not the statements regarding liability and payment of expenses made by the Transit Company's agent were admissible as evidence of the Company's negligence, his admission and promises made during the interview which resulted

in the plaintiff's daughter giving the statement on which she was cross-examined are admissible as a matter of verbal completeness.

The cases of *Turner v. Jenkins,* 1 Harris & G. 161, *Bowie v. Stonestreet,* 6 Md. 418, and *Smith v. Wood,* 31 Md. 293, cited by the appellant, all involved situations where a part of what was said by one party during a particular conversation was offered in evidence by the opposing party. In each case it was held that the party whose statement was involved was entitled to show all that he or she had said on the subject in the conversation in question and not merely such part of his or her statements as the opponent chose to offer. The appellee does not challenge the correctness of the holdings in those cases, but denies their applicability to the present case. In each of them the other statements made in the same conversations were made by the same parties and were germane to the question at issue. Also, none of them involved supplementing a written statement signed by one party by oral statements made by someone else during the interview which resulted in the signed statement being given. We have been referred to no case raising precisely the question at issue here.

*Wigmore on Evidence,* 3rd Ed., Vol. VII, § 2114, states:

"(4) When a *witness* of a *party* has been *impeached by prior utterances* showing *bias* or *self-contradiction,* fairness requires that he be allowed to explain away their effect, if he can (*ante,* Sections 952, 1044 and 1058). One way of explaining may be to give the remainder of what he said at the time. Here, then, the putting in of the explanatory parts is justifiable equally on two principles * * *."

And in § 2115, the author continues:

"The general phrasing of the principle, then, is that when any part of an oral statement has been put in evidence by one party, the opponent may afterwards (on cross-examination or re-examination) put in the remainder of what was said *on the same subject at the same time.* This phrasing leaves

something to be desired in definiteness, but it is practically applied without much difficulty and with little or no quibbling.

"Its most common application is to *conversations* in general, including the *admissions of an opponent* and to *inconsistent statements of a witness* used in impeachment * * *."

Both of these passages (and more) are cited by the appellant. But § 2113 of the same work (which is not cited) reads in part as follows:

"§ 2113. General Principle; the Whole on the Same Subject, if Relevant, may be put in. For the reasons already sufficiently examined (*ante,* § 2094) the opponent, against whom a part of an utterance has been put in, may, in his turn, complement it by putting in the remainder, in order to secure for the tribunal a complete understanding of the total tenor and effect of the utterance. * * *

"This right of the opponent to put in the remainder is universally conceded, for every kind of utterance without distinction; and the only question can be as to the scope and limits of the right.

"The ensuing controversies are in effect concerned merely with drawing the line so that the opponent shall not, under cloak of this conceded right, put in utterances which do not come within its principle and would be otherwise irrelevant and inadmissible. In the definition of the limits of this right, there may be noted three general corollaries of the principle on which the right rests, namely:

(a) *No utterance irrelevant to the issue is receivable;*

(b) *No more of the remainder of the utterance than concerns the same subject, and is explanatory of the first part,* is receivable;

(c) *The remainder* thus received merely *aids in the construction of the utterance as a whole,* and is not in itself testimony."

The investigator's admission and promises, we think, do not meet these tests. They are not relevant to the speed or momentum of the street car or to any other facts pertaining to the accident, they do not concern that subject and they do not aid in the construction of the witness' utterance (her written statement) as a whole.

3. *Explanation of Discrepancies.* It may be assumed, we think, that if the Transit Company's representative had made an untrue or fraudulent representation which had led the plaintiff or her daughter into making an incorrect statement, any such representation could be shown to explain any incorrect statement thereby induced. The difficulty with the plaintiff's position in this case is simply that no causal connection has been shown between any statement or misstatement made by the Transit Company's representative and any inaccuracy in the statement signed by the plaintiff's daughter.

The appellant seeks to fill this gap by the argument that the admission and promises made by the Transit Company's representative lulled the plaintiff and her daughter into a false sense of security which threw them off their guard and caused them to "ease their diligence to make certain that their statements were recorded with exactitude." She claims that the atmosphere and background of the interview should have been before the jury when considering conflicts between her testimony in court and what was contained in the statement which she had signed. She did not make any such argument in the trial court, so far as the record discloses. There she suggested only that the promises of the investigator might possibly be construed as consideration or inducement for the making of the statement. That contention is substantially repeated in her brief in this Court, but it has not been pressed here and no authority to support it has been cited. We see no legal consequence favorable to the plaintiff which would follow if the suggested fact is true. Consequently we see no merit in the contention.

When we return to the variant argument submitted here based upon the alleged false sense of security created by the promises made by the Transit Company's investigator and

the inattention to accuracy which, it is urged, would thereby be produced, we find one thing which impresses us as highly significant in connection with the appellant's proffer. This is that in making the proffer the appellant did not so much as suggest that the witness' false sense of security had actually lured her either into making an inaccurate statement or into an attitude of indifference or inattention to the accuracy with which her statements had been recorded by the investigator. In other words, she failed to connect the statement which she sought to offer with the discrepancy which she was seeking to explain. Her actual explanation, as we understand it, (though it is not wholly clear) is simply that the investigator failed to express her version of the accident correctly, and she offered no explanation as to why she had failed to observe the inaccuracy when she signed the statement. We think that the explanation now offered by the appellant is a matter of inference which is not supported by anything in the testimony or in the proffer sufficiently definite to lift it above mere speculation. Merely speculative evidence should not be submitted as the basis for a finding by a jury. See, for example, *State, use of Parr v. Board of County Commissioners of Prince George's County*, above cited.

The witness was given an opportunity to explain her prior statements. (*Wigmore, op. cit.*, Vol. III, § 1044.) But the connecting link is missing between the proffered evidence and the explanation of discrepancies. The investigator's statements simply were not offered to explain or excuse any inaccuracy in her signed statement or to reconcile her earlier statement with her testimony in court with regard to the accident and the proffer did not suggest that these statements supplied any such explanation or excuse.

We think that the evidence proffered by the plaintiff was properly rejected. Accordingly, the judgment will be affirmed.

*Judgment affirmed, with costs.*

COLLINS, J., delivered the following dissenting opinion.

I agree with the majority opinion that there was no proof of any express authorization of the representative of the

Transit Company to make an admission of liability which would bind it. However, I am of opinion that the appellant should have been allowed to state the other conversation with the Transit Company's representative at the time she signed the statement and which she claimed led up to the statement. This was used by the Transit Company in cross-examination of the appellant for the purpose of contradicting her testimony and was treated by all the parties as if it had been offered in evidence. As pointed out in the majority opinion, the cases of *Turner v. Jenkins,* 1 Harris & G. 161, *Bowie v. Stonestreet,* 6 Md. 418, and *Smith v. Wood,* 31 Md. 293, all involved situations where a part of what was said by one party during a particular conversation was offered in evidence by the opposing party. Also, as pointed out, it was held in each of those cases that a party whose statement was involved was entitled to show all that was said on the subject in the conversation in question and not merely such part as the opponent chose to offer. It was said in *Bowie v. Stonestreet, supra*: "If her admissions or declarations are to be used for a purpose adverse to her claim, those made at the same time, which are in her favor, must be also received." In *Smith v. Wood, supra,* the defendant offered, on cross-examination of a witness, certain statements made by the plaintiff. It was said in that case: "This certainly entitled the other party to offer in evidence all that was said by the plaintiff at the time, in reference to his claim of the property. The offer in testimony of a part of a statement or conversation, upon a well-established rule of evidence, always gives to the opposite party the right to have the whole." Also, it is well established that an impeached witness has the right to explain away the effect of supposed inconsistencies, by explaining the circumstances surrounding the making of the statement which tend to clear up any apparent inconsistencies. *Wigmore on Evidence,* 3rd Ed., Vol. III, Secs. 952 and 1044.

Appellant's contention that the statement by the representative of the Transit Company influenced her in making the written statement seems plausible and, therefore, the statement of this representative should have been submitted to the jury. It may well be that the representative of the Transit

Company had no authority to tell the appellant what she claimed was told her before she made her written and signed statement. However, the Transit Company was in no way compelled to offer this statement. It was evidently offered to influence the jury and in all probability did influence the jury in reaching its verdict, whether or not there was any causal connection between the statement or misstatement. If the Transit Company chose to offer it, the appellant should in all fairness have been allowed to state all the conversation leading up to the statement. I am of opinion that the judgment should be reversed and a new trial awarded.