596 A.2d 640

B & K RENTALS AND SALES CO., INC.

v.

UNIVERSAL LEAF TOBACCO CO. et al.

No. 135 Sept. Term, 1990.

Court of Appeals of Maryland.

Oct. 9, 1991.

Motion for Reconsideration Denied Nov. 27, 1991.

148

Georgia Lewis Leonhart, Baltimore, for petitioner.

Janet S. Zigler (Albert D. Brault, Brault, Graham, Scott & Brault, all on brief), Rockville, for respondents.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE and CHASANOW, JJ., and CHARLES E. ORTH, Jr., Judge of the Court of Appeals (retired), Specially Assigned.

CHASANOW, Judge.

Universal Leaf Tobacco Co. (Universal), through its subsidiary, Winstead Co., Inc., owned and operated a tobacco warehouse. B & K Rentals and Sales Co., Inc. (B & K) leased a portion of the warehouse to store equipment used in its business of renting scaffolding and seating for public gatherings. A fire broke out at the warehouse destroying most of B & K's equipment. Contending that the negligence of Universal and its employees caused the fire, B & K brought an action for damages against Universal in the Circuit Court for Anne Arundel County.

On the day of the fire, two of Universal's employees, Walter Johnson (Johnson) and Leonard Grimes (Grimes), were present and working within the tobacco warehouse. Johnson was killed by the fire. The parties dispute B & K's ability to locate Grimes at the time of trial. Consequently, they also dispute his availability as a witness. Nonetheless, B & K neither deposed nor subpoenaed Grimes. Rather, B & K called Lieutenant Kenneth J. Klasmeier (Lt. Klasmeier), a fire investigator with the Anne Arundel County Fire

Department, as an expert witness for the purpose of testifying as to the cause of the fire.

Lt. Klasmeier had investigated the fire in progress and had received a written report from Lieutenant James Stallings (Lt. Stallings), who is also a fire investigator with the Anne Arundel Fire Department, regarding the origin and cause of the fire. Pursuant to his investigation and report, Lt. Stallings had interviewed various people, including Grimes, at the scene of the fire. Grimes told Lt. Stallings that: 1) Johnson and he were the only two people working at the warehouse at the time of the fire; 2) Grimes had lit an acetylene torch for Johnson a couple of hours before the fire; 3) Johnson was using the torch to burn strings caught in the jack wheels of a wooden dolly; 4) Grimes heard a popping noise and saw smoke coming from the area where Johnson had just finished burning the string from the jack wheels; and 5) Grimes believed the cause of the fire was related to Johnson's use of the acetylene torch.

Based almost exclusively upon Grimes' statements, Lt. Stallings' report described the events which preceded the fire. This report formed the bulk of the Fire Investigation Bureau report which was forwarded to the Division Chief of the Anne Arundel County Fire Department. Universal objected to the admission of this report, as well as a second report written by Lt. Klasmeier and forwarded to the State Fire Marshal's Office, on the ground of hearsay, actually double-level hearsay. Universal contended that Grimes' statements constituted the second level of hearsay and the written report of those statements constituted the first. The intermediate appellate court noted that little or no objection was raised that the reports constituted business records.[1] While the business records hearsay exception may allow the admission of the lieutenants' firsthand obser-

---

1. The parties and the Court of Special Appeals have referred to these reports as being business records, and we will continue to use that terminology. We note, however, that they may also fall within the official/public records exception. *See Ellsworth v. Sherne Lingerie, Inc.,* 303 Md. 581, 612, 495 A.2d 348, 363–64 (1985).

vations contained within the reports, Grimes was not part of the county fire department "business" and his hearsay statements made to Lt. Stallings and contained within the reports would have to be excised unless they were admissible under some other hearsay exception.[2] The trial court excluded the reports, as well as Lt. Stallings' in-court testimony because each was based upon Grimes' hearsay statements, which it determined qualified neither as admissions of a party opponent nor as part of the undifferentiated *res gestae.*

Lt. Klasmeier, on the other hand, was permitted to testify that in his opinion "the cause and origin would have been the actions of Johnson using an acetylene torch to burn strings off of wheels inside the warehouse." Lt. Klasmeier was permitted to so testify despite his admission that he would not have been able to formulate such an opinion absent Grimes' statements. The case went to the jury on a *res ipsa loquitur* instruction, and the jury returned a verdict for B & K for $123,252.00. Universal moved the court for judgment notwithstanding the verdict on the grounds that the expert opinion of Lt. Klasmeier was improperly admitted into evidence and that B & K had proven either too much or too little to rely upon *res ipsa loquitur.* The trial court granted the motion and entered judgment N.O.V. for Universal on the basis of the second ground only. B & K filed motions for a new trial and for reconsideration which were denied by the trial court. B & K then appealed.

The Court of Special Appeals noted that B & K's notice of appeal referred only to the trial court's denial of its post-

---

2. "An oft recurring version of multiple hearsay involves a primary hearsay exception in the form of a regularly kept business record which includes a further hearsay statement. If the included statement is by a person acting in the routine of the business, the regularly kept records exception takes care of the matter and no further exception need be invoked. However, if the person whose statement is included is not in the routine of the business, resort must be had to a further exception." *McCormick on Evidence,* § 324.3 at 912 (E. Cleary, 3d ed. 1984).

trial motions. The intermediate appellate court held that the sole issue preserved for appeal was whether the trial court had abused its discretion in denying the post-trial motions. *B & K Rentals v. Universal Leaf*, 73 Md.App. 530, 535 A.2d 492 (1988). Finding no abuse of discretion, the Court of Special Appeals affirmed the judgment of the trial court.

This Court granted certiorari and held that the limiting language in the notice of appeal did not preclude consideration of the underlying judgment. Therefore, the Court of Special Appeals was reversed and the case remanded for further proceedings. *B & K Rentals v. Universal Leaf*, 319 Md. 127, 571 A.2d 1213 (1990). On remand, the intermediate appellate court affirmed the underlying judgment of the trial court. *B & K Rentals v. Universal Leaf*, 84 Md.App. 103, 578 A.2d 274 (1990).

In addressing the admissibility of Lt. Klasmeier's testimony, the Court of Special Appeals quite properly reasoned that "[i]f, in fact, the predominant basis for the opinion is information that the law deems unreliable, the opinion loses much, if not all, of its probative value, for it then essentially regurgitates the underlying untrustworthy information." *Id.* at 121, 578 A.2d at 283. By Lt. Klasmeier's own admission, Grimes' statements furnished the predominant basis for his opinion. Therefore, the decisive question addressed by the intermediate appellate court, and the question upon which this Court granted certiorari, was whether each of Grimes' statements to Lt. Stallings constituted admissions by Universal.

Although it is clear that Grimes was Universal's agent, he had no express authority to speak for Universal. B & K argued below and now urges this Court to adopt the principle embodied in Federal Rule of Evidence 801(d)(2)(D) that a statement made by an agent of a party opponent which concerns a matter within the scope of the agency or employment and is made during the existence of that relationship constitutes an admission of the party opponent. While recognizing and discussing the sound rationale behind lib-

eralizing the admission of an agent's statement, the Court of Special Appeals concluded that Grimes' statements were not admissible under existing Maryland law. We take this opportunity to re-examine the development of our case law on vicarious admissions and to join the substantial majority of states adopting the principle embodied in F.R.E. 801(d)(2)(D).

Traditionally, an agent was required to have "speaking authority" before his statement was considered an admission of the principal. *See Brown v. Hebb,* 167 Md. 535, 547, 175 A. 602, 607 (1934), where we quote the *Restatement of Agency,* § 286 (1933): "Statements of an agent to a third person are admissible in evidence to prove the truth of facts asserted in them as though made by the principal, if the agent was authorized to make the statement or was authorized to make, on the principal's behalf, true statements concerning the subject matter." This test of admissibility was further defined in *Feigley v. Balto. Transit Co.,* 211 Md. 1, 124 A.2d 822 (1956). Again, this Court looked to the *Restatement of Agency* for the principles that:

> "(1) Authority to do an act or conduct a transaction does not of itself include authority to make statements concerning the act or transaction.
>
> (2) Authority to make statements of fact does not of itself include authority to make statements admitting liability because of such facts."

*Feigley,* 211 Md. at 8, 124 A.2d at 826 (quoting *Restatement of Agency,* § 288). The Court in *Feigley* applied the above standard to exclude admissions of liability made by a Baltimore Transit Company representative and concluded that "the fact that he was employed to investigate the claim is not enough of itself to support an implied authorization to make such an admission." 211 Md. at 8, 124 A.2d at 826.

As in *Feigley,* the application of this traditional test of agency law as an evidentiary standard "frequently caused courts to exclude the agent's highly probative statement on

the theory that the employer had not authorized the agent to make damaging remarks about him." 4 J. Weinstein & M. Berger, *Weinstein's Evidence*, ¶ 801(d)(2)(D)[01] at 219 (1988).

In order to avoid the loss of valuable and trustworthy evidence occasioned by the use of this narrow formula of admissibility, the Maryland courts resorted to the use of the *"res gestae* exception" to the hearsay rule. The intermediate appellate court felt bound to a line of Maryland cases that adopted the standard of admissibility, most succinctly stated in *Burkowske v. Church Hosp. Corp.*, 50 Md.App. 515, 439 A.2d 40, *cert. denied*, 293 Md. 331 (1982), "in order to bind the principal (and thus constitute an admission by it), the agent's statement not only must concern matters within the scope of his own agency authority *but must also be part of the res gestae, i.e., made contemporaneously with the transaction to which it relates."* (Emphasis added). *Id.* at 520, 439 A.2d at 44.

This Court first fully expounded this standard for admissibility of an agent's statement in *Franklin Bk. v. Steam Nav. Co.*, 11 G. & J. 28 (1839):

"So whatever is said by an agent, either in the making a contract for his principal, or at the time, and accompanying the performance of any act, within the scope of his authority, having relation to, and connected with, and in the course of the particular contract or transaction in which he is then engaged, is in legal effect, said by his principal, and admissible in evidence; not merely because it is the declaration or admission of an agent; but on the ground, that being made at the time of, and accompanying the contract or transaction, it is treated as the declaration or admission of the principal, constituting a part of the *res gestae*, a part of the contract or transaction, and as binding upon him as if in fact made by himself."

*Id.* at 33–34.

We begin by acknowledging that the phrase *"res gestae"* is condemned in academic circles as "a substitute for rea-

soning" and resulting in "the confusion of thought inevitably accompanying the use of inaccurate terminology." Morgan, *A Suggested Classification of Utterances Admissible as Res Gestae*, 31 Yale L.Rev. 229, 229 (1923). We agree with Morgan's conclusion that "this troublesome expression owes its existence and persistence in our law of evidence to an inclination of judges and lawyers to avoid the toilsome exertion of exact analysis and precise thinking." *Id.* *See United States v. Matot*, 146 F.2d 197, 198 (2d Cir.1944) ("[A]s for *'res gestae'* . . . if it means anything but an unwillingness to think at all, what it covers cannot be put in less intelligible terms.") (L. Hand, J.); 6 Wigmore, *Evidence,* § 1767 at 255 (Chadbourn rev.1976) ("The phrase *'res gestae'* has long been not only entirely useless, but even positively harmful."); *Booth v. State*, 306 Md. 313, 317 n. 3, 508 A.2d 976, 978 n. 3 (1986) quoting the above authorities. *See also Cassidy v. State*, 74 Md.App. 1, 12–14, 536 A.2d 666, 671–73, *cert. denied*, 312 Md. 602, 541 A.2d 965 (1988) for an unbundling of the undifferentiated *"res gestae"* phrase.

Despite the censure of the *"res gestae"* phrase, we also acknowledge that the term came into usage at a time when the theory of hearsay was not well developed and the various exceptions not clearly defined. The rationale in *Franklin* supports McCormick's observation that "[t]he early texts and cases used as analogies the doctrine of the master's substantive responsibility for the acts of the agent and the notion then prevalent in evidence law that words accompanying a relevant act are admissible as part of the *res gestae." McCormick on Evidence,* § 267 at 787 (E. Cleary 3d ed. 1984). Under this formulation, a principal was responsible for its agent's acts within the scope of authority or employment, but only responsible for its agent's statements concerning those acts if the statements were made under the "immediate spur" of the action. *See, e.g., Herbert v. Ziegler*, 216 Md. 212, 217, 139 A.2d 699, 702 (1958).

The Court applied this contemporaneity requirement to assure reliability; the close nexus in time between the statement and the event recounted presumably precluded the agent's ability to fabricate. While contemporaneity may be a meaningful component of the hearsay exceptions for excited utterances and present sense impressions, we find it unnecessary in the case of vicarious admissions. The admissions exception is grounded on the adversary theory of litigation. *See McCormick on Evidence,* § 262 at 774–75; L. McLain, *Maryland Evidence,* § 801(4).1 (1987). The rationale behind the admissibility of an admission is that "[a] party can hardly object that he had no opportunity to cross-examine himself or that he is unworthy of credence save when speaking under sanction of an oath." M. Martin, *Basic Problems of Evidence,* § 13.04(a)(1) (6th ed. 1988). Further, the trustworthiness of an agent's statement is assured because:

"The agent is well informed about acts in the course of the business, his statements offered against the employer are normally against the employer's interest, and while the employment continues, the employee is not likely to make the statements unless they are true. Moreover, if the admissibility of admissions is viewed as arising from the adversary system, responsibility for statements of one's employee is a consistent aspect. Accordingly, the predominant view now favors broader admissibility of admissions by agents if the statement concerned a matter within the scope of the declarant's employment and was made before that relationship was terminated."

*McCormick on Evidence,* § 267 at 788–89.

Perhaps because this Court recognized this trustworthiness when addressing the admissibility of an agent's statements as part of the *res gestae,* it often relaxed the contemporaneity requirement to prevent the loss of reliable and probative evidence. In *Patterson v. B. & O. R.R. Co.,* 133 Md. 276, 105 A. 159 (1918), a case factually similar to the one *sub judice,* this Court addressed the admissibility of statements made by the defendant's employees to the effect

that they started a fire and that it got beyond their control. In holding that the employees' statements were admissible into evidence, the Court noted

> "that there is no inflexible rule as to what lapse of time between the commission of an act and the making of the proffered declaration is sufficient to cause its rejection as not being part of the *res gestae....* 'Time is not necessarily a controlling element or principle in the matter of *res gestae.* The general rule is that a declaration sought to be proved must have been contemporaneous with the event established as the principal act; but in order to constitute declarations a part of the *res gestae,* it is not necessary that they shall have been precisely coincident in point of time with the principal fact.' "

*Id.* at 279–80, 105 A. at 160 (quoting 10 Ruling Case Law at 978). *See also Ziegler,* 216 Md. at 217, 139 A.2d at 702; *Transfer Co. v. Glass Co.,* 169 Md. 358, 363–64, 181 A. 672, 674 (1935); *Montgomery Bus Lines v. Diehl,* 158 Md. 233, 241–42, 148 A. 453, 456–57 (1930); *United Rys. & Elec. Co. v. Cloman,* 107 Md. 681, 687–89, 69 A. 379, 382 (1908). The end result of admissibility attained in this line of cases essentially parallels that which would have resulted from applying the standard embodied in F.R.E. 801(d)(2)(D).

Unfortunately, the contemporaneity aspect of the loosely defined *res gestae* exception has also been strictly applied to exclude an agent's or employee's statements even though the exclusion resulted in the loss of valuable, trustworthy, and often the only probative evidence available on the issue of causation. *See Feigley,* 211 Md. at 7–8, 124 A.2d at 825–26; *State v. Prince George's County,* 207 Md. 91, 105–06, 113 A.2d 397, 404 (1955); *Dietrich v. Hall Spgs. R.R. Co.,* 58 Md. 347, 355–56 (1882).

The non-uniformity in the above cited cases, a result spawned by employing the nebulous *res gestae* phrase, substantiates its academic and judicial condemnation. We now jettison the *res gestae* terminology in favor of a more exact analysis and adopt the standard embodied in F.R.E. 801(d)(2)(D). Statements by agents concerning a matter

within the scope of the agent's employment and made during the existence of the agency relationship should be admissible without the necessity of proving that the agent had authority to speak or that the statements were part of the *res gestae.*

We are cognizant of the importance of *stare decisis* and the resulting certainty, definition, and dependability it gives the law. This Court, however, has noted that a common law rule may be modified where "we find, in light of changed conditions or increased knowledge, that the rule has become unsound in the circumstances of modern life...." *Harrison v. Mont. Co. Bd. of Educ.,* 295 Md. 442, 459, 456 A.2d 894, 903 (1983). Increased knowledge as well as the guidance of a significant majority of other states [3] and the federal rules convince us that the traditional common law rule on admissions by agents has proven to be too restrictive and unsound. The authorities, both courts and commentators, have almost universally condemned the strict common law rule in favor of the expanded admissions by agents rule set forth in the federal rules. *See, e.g., McCormick on Evidence,* § 267; 4 *Weinstein's Evidence,* ¶ 801(d)(2)(D)[01]; 4 Wigmore, *Evidence,* § 1078 at 166 n. 2 (Chadbourn rev.1972); and I. Younger, *Hearsay: A Practical Guide Through the Thicket,* § 3.8 (1988).

This change in our law will place Maryland in accord with the clear majority of states that have adopted the principle embodied in F.R.E. 801(d)(2)(D) either by statute, rule, or decision. *See* 2 G. Joseph & J. Saltzburg, *Evidence in America,* Ch. 56 at 19–22 (1987), and *Ruszcyk v. Secretary of Public Safety,* 401 Mass. 418, 517 N.E.2d 152 (1988). We note that the Evidence Subcommittee, which is engaged in drafting a proposed Maryland Code of Evidence to be submitted to the Court of Appeals Rules Committee and

---

**3.** Appellant, in its brief, lists 33 states that have by statute, rule, or court decision jettisoned the traditional common law rule in favor of the approach adopted by the Federal Rules of Evidence. *See* G. Joseph & J. Saltzburg, *Evidence in America,* Ch. 56 at 19–22 (1987).

then to this Court, has recommended the change we now adopt. *See* Maryland Evidence Subcommittee Draft of Rule 5–803(a)(4) proposing that "a statement made by a party's agent or employee concerning a matter within the scope of agency or employment" be admissible against the party opponent. Weinstein summarizes the underlying policy considerations that have prompted the widespread adoption of F.R.E. 801(d)(2)(D):

"Often, of course, particularly in tort cases, the agent was the only one who knew what happened.

\* \* \* \* \* \*

Rule 801(d)(2)(D) adopts the approach pioneered by Model Code Rule 508(a) and endorsed by Uniform Rule 63(9)(a) which, as a general proposition, makes statements made by agents within the scope of their employment admissible.... Once agency, and the making of the statement while the relationship continues, are established, the statement is exempt from the hearsay rule so long as it relates to a matter within the scope of the agency. '[T]he authority to do an act would conclusively imply authority to speak narratively about the act, if the utterance was made before the termination of the agency.'

\* \* \* \* \* \*

The arguments for broadening the traditional narrow formulation were well stated by Professor Brooks, the Reporter for the New Jersey Committee which endorsed adoption of Uniform Rule 63(9)(a) for that state: *'The argument for the Rule is, first, one of necessity.* Unless it is adopted many valid admissions which would help in the effective disposition of litigation would be lost.... To continue the restriction on this exception would be to immunize all principals from statements made by their working agents and employees who transact their business....' " (Emphasis added, footnotes omitted).

4 *Weinstein's Evidence,* ¶ 801(d)(2)(D)[01] at 219–25.

Principles of fairness would also justify the adoption of the rule embraced by F.R.E. 801(d)(2)(D). As stated in the

Official Comments to La.Code Evid. 801(D)(3)(a): "[I]t may be said that, in accord with principles of substantive law, one who undertakes to create an agency relationship should generally be made to reap the deleterious as well as the beneficial effects of what the agent sows." Hearsay is inadmissible primarily because of the lack of cross-examination to test for flawed perception, memory, or sincerity. When an employer entrusts responsibility for a job to an employee, it relies on the latter's perceptions, abilities, and judgments and consequently can be vicariously liable for any resulting deficiencies. It seems unfair to allow an employer to challenge an agent's relevant statements as hearsay merely because the employer has not had an opportunity to impugn through cross-examination the agent's perception, memory, or sincerity. Therefore, just as an employer is vicariously liable for the acts of its employees within the scope of employment, so too should the employer be vicariously liable for the statements of its employees concerning those acts.

The seeming unfairness of allowing an employer to reap the benefits of its employee's labor, yet remain immune from a statement by the latter about his assigned tasks, led to a number of pre-rules decisions rejecting the traditional limit. *See* 4 D. Louisell & R. Mueller, *Federal Evidence*, § 426 (1980). For example, the United States District Court for the District of Columbia rejected the traditional common law rule and admitted a truck driver's statement after an accident.

"To say, in these circumstances, that the owner of a motor truck may constitute a person his agent for the purpose of the operation of such truck over public streets and highways, and to say at the same time that such operator is no longer the agent of such owner when an accident occurs, for the purpose of truthfully relating the facts concerning the occurrence to an investigating police officer on the scene shortly thereafter, seems to me to erect an untenable fiction, neither contemplated by the parties nor sanctioned by public policy. It is almost like

saying that [an admission] in the instant case could only have been made had the truck been operated by an officer or the board of directors of the Corporation owning the truck; and trucks are not operated that way. To exclude the statement of the driver of the truck as to the speed of the truck at the time of the collision ... would be to deny an agency which I believe inherently exists regardless of whether the statement is made at the moment of the impact, or some minutes later to an investigating officer, or other authorized person."

*Martin v. Savage Truck Line,* 121 F.Supp. 417, 419 (D.D.C.1954).

The Supreme Judicial Court of Massachusetts modified its common law by adopting the principles of F.R.E. 801(d)(2)(D) and concluded that such adoption

"will not automatically result in the admissibility of vicarious admissions of questionable reliability. Rather, this approach will simply remove vicarious admissions from the blanket interdiction of the hearsay rule. Instead, discretion is vested in the judge to determine whether the probative value of the evidence is substantially outweighed by its potential for unfair prejudice to the opponent of its admissibility."

*Ruszcyk,* 401 Mass. 418, 517 N.E.2d at 155. *See also Briggeman v. Albert,* 322 Md. 133, 138–39, 586 A.2d 15, 17 (1991).

To the extent that language in some of our opinions is inconsistent with the holding of this opinion, that language is disapproved. We also note that the adoption of the F.R.E. 801(d)(2)(D) standard does not abrogate admissibility of an agent's statements where the agent has "speaking authority." These two grounds of admissibility coexist as do F.R.E. 801(d)(2)(C) & (D). Henceforth, the hearsay rule does not operate to exclude a declaration that is "offered against a party and is ... a statement by a party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship...." F.R.E. 801(d)(2)(D). There is no requirement

that the agent have "speaking authority" or that the agent's statement was part of the *res gestae*.

■ Applying the 801(d)(2)(D) standard to Grimes' statements, we find adequate evidence, independent of the statements themselves, to support the conclusions that 1) Grimes was Universal's agent; 2) Grimes' statements concerned activities undertaken in the warehouse that were within the scope of his employment; and 3) Grimes' statements were made during his employment. Therefore, Grimes' statements should not be excluded as inadmissible hearsay. Likewise, neither the reports nor the lieutenants' testimony would be properly excluded on this ground. We reverse the holding of the Court of Special Appeals.

■ The trial court and the Court of Special Appeals also ruled that the case should not have been submitted to the jury on the theory of *res ipsa loquitur*. We agree. With the admission of the lieutenants' testimony and reports, B & K would have direct evidence of negligence; therefore, a new trial on the issue of negligence is warranted.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REMAND THIS CASE TO THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY FOR A NEW TRIAL ON THE ISSUE OF NEGLIGENCE. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.